# COURT OF APPEALS.

## OLIVER W. ✦MARVIN, respondent, agt. MARGARET INGLIS, appellant.

Where a referee finds that at the time a mortgagee signed his name to an *assignment* of the mortgage, he was of *unsound mind,* and incapable of executing a legal instrument; such finding is conclusive upon this court.

Therefore such assignment is *void,* unless made valid by some other fact disclosed in the case.

The acts of the *wife* of the mortgagee in conducting and managing the affairs of her husband, and in procuring the execution of the assignment of the mortgage, are not sufficient to constitute her his *agent* for that purpose, so as to make valid the assignment; for a person mentally incapable of transacting business, cannot appoint an agent to transact it for him, the act of the agent in such case would be equally void.

It may be assumed, and such is the law, that an exception taken to the refusal of a referee to find a fact material to the rights of the party, established by *unconflicting proof,* is available in this court, as such refusal would be an error of law.

If no *title* to the mortgage was conveyed by the assignment in the life-time of the mortgagee, such title could not be conveyed by any *delay* of his personal representatives after his death, in asserting their right thereto.

Where the *evidence* as to whether the administratrix (the widow) of the mortgagee, either before or after she became administratrix, ever received anything on account of the assignment of the mortgage, was *conflicting,* the refusal of the referee to find that she had received anything on account thereof, after she became administratrix, was justified.

The law is well settled that a purchaser of *choses in action,* other than such as by the law-merchant are negotiable, acquires no better title than that of his vendor. Consequently any subsequent assignee, under a void assignment to the first assignee of the mortgage, acquired no better title than the first assignee.

Where the *defect of parties,* if any, appears upon the face of the complaint, the question can only be raised by demurrer.

An action to recover a *mortgage,* or the *money received thereon, survives* to the personal representatives, and is *assignable.*

*April,* 1869.

AN action to declare inoperative and void an assignment of a mortgage, and to collect the amount of moneys received thereon by the defendant's testator, an assignee of said mortgage.

The facts of the case were not disputed by either party on the trial. The following is a brief summary of them.

David D. Marvin, the father of the plaintiff, died intestate on or about Oct. 21st, 1352, leaving his widow, Mary Augusta (now Fanning), and the plaintiff, his only child, surviving him.

In the fall of 1850, David D. Marvin (who was a physician) received an injury on his head, and in December, 1850, he was enfeebled by fever, and his mind was in some respects impaired, and on the 7th January, 1851, he was removed to the Butler Hospital, in the state of Rhode Island, where he continued till his death.

The doctor's sickness was kept secret, his wife hoping he might recover and resume his practice.

Mrs. Marvin visited her husband ten days after he was taken to Providence, and as often as once in three months till his death, and he was always rational during her visits, conversed with her about her domestic affairs, knew of her collecting in moneys and selling property, and that Dr. Purdy was attending to his medical business, and dividing proceeds with Mrs. Marvin; he inquired if she had plenty of money, &c., and requested that she would not sell the horse (Charley).

The evidence shows irksomness under restraint and some delusion before the doctor was taken to the Butler Hospital and some delusion afterwards, while there, but there was no total deprivation of reason till a few weeks before his death. The doctor's disease was called general paralysis; the mental affection is characterized usually by extravagant notions of one's abilities or wealth, the bodily infirmity (as in this case) was not apparent until the last stages. He inquired about his son and relations, wrote to them and his wife, heard his wife read and understood it, and was particularly attentive to medical matters.

Shortly after the doctor's sickness, and prior to March, 1851, Mrs. Marvin became solicitous to obtain the control

of seven Harlem lots, owned by Dr. Marvin, and a bond and mortgage given to the doctor by Caleb S. Butts for $750, and advised with her brother Edwin Wilcox, and his wife, how she could do it. He told her, that her husband could not convey to her, but that they both might convey to some third party, who, in turn might re-convey back to her, by which means she could obtain the title in her own right. She concluded to do that, and the deed was prepared with that expectation. Mrs. Marvin suggested, that Dr. Purdy should go to get Dr. Marvin's signature. Wilcox replied, that was the only course she could pursue to get the title in herself, unless she took out a commission of lunacy; and she and Mrs. Wilcox, in conformity to the advice of Edwin Wilcox, prepared a deed for the seven lots, and an assignment of the mortgage to S. M. Whittlesey, and sent them by Purdy to the doctor, he, Purdy, being told to give the doctor her love and request him to sign the deed and assignment of mortgage, which he did, and Purdy returned them to Mrs. Marvin and proved the execution as subscribing witness, Mrs. Marvin duly signing and acknowledging the deed, as the doctor's wife.

The title was put in Miss Wittlesey that she might re-convey to Mrs. Marvin. The assignment of the bond and mortgage were given by Mrs. Marvin to Edwin Wilcox, and she told him what he might do with it.

Mrs. Marvin, about the 21st of October, 1851, agreed to and did dispose of the lots and bond and mortgage to Amelia A. Wilcox, wife of Edwin Wilcox, for $1,000. Wilcox and wife had no idea of purchasing from Mrs. Marvin until they were conveyed to Anthon.

At that time the Butt's bond and mortgage were assigned to Anthon for $750, on or about October 21, 1851.

Miss Whittlesey lived in New Jersey, knew nothing about her name being used until she come to New York, in October 1851, to convey the lots to Anthon; she assigned Butt's bond and mortgage to Anthon, October 21st, 1851,

and Mrs. Marvin knew that this property was used in the purchase of the farm from Anthon, the farm was conveyed to Mrs. Wilcox by Miss Whittlesey immediately thereafter, and Mrs. Marvin received that $1,000, in different sums, part in six months afterwards, and part in a year thereafter, which would bring the last payment to April, 1853.

Mrs. Marvin took out letters of administration on the estate of her husband in January, 1853.

John Anthon received the bond and mortgage in good faith, and William Inglis received an assignment thereof in good faith, October 30th, 1851.

On the foreclosure of a subsequent mortgage, Inglis was made a party and pursuant to the judgment of the court, he received March 25th, 1853, interest and principal, $844.56.

The plaintiff was born February 1st, 1841, became of age February 1st, 1862; his mother collected the doctor's bills before his death and afterwards, and the $1,000, when received, was mingled with the collections, and therefrom were paid Mrs. Marvin's expenses, the sons expenses and the doctor's expenses, and there still remains about $3,000 in her hands.

The cause was referred to PHILO T. RUGGLES, Esq., as referee, who found and reported therein as follows:

*To the court:*—The undersigned, Philo T. Ruggles, the referee to whom, by the order of this court, made herein, it was referred to hear, try and determine the issues joined in this action, having proceeded under said order to the hearing of the matter so referred, and been for that purpose attended by the plaintiff, and by Mr. Joseph Neilson, his attorney and counsel, and by the said defendant, by Mr. Andrew Thompson, one of her attorneys, and her counsel; and having taken the proofs, oral and documentary, produced before me, and heard the argument of counsel, and duly considered the same, doth find and report as follows:

*As my conclusions of fact:*

That the late David D. Marvin held and owned the bond and mortgage, in the complaint mentioned as having been executed by Caleb S. Butts to him, and that, as also set forth in said complaint, on a foreclosure of a subsequent mortgage upon the premises, William Inglis was made a defendant, as the apparent assignee and owner on record of the said first mentioned bond and mortgage, and, out of the proceeds of the sale of said premises, the said William Inglis, as such apparent owner received $844.56 on the 25th day of March, 1853, on account of said first mentioned bond and mortgage, that sum being the amount due for principal and interest up to that date besides his costs.

That in the fall of the year 1850, and for some weeks prior to the 1st of January, 1851, the said David D. Marvin was ill, and suffering from [certain mental delusions and alineations, and was kept closely confined in his residence in the city of New York, and under medical treatment ; that, about the 1st of said month of January, 1851, the said David D. Marvin was removed to the Butler Hospital for the insane, at Providence, in the state of Rhode Island, where he remained in confinement and under medical treatment for his mental disorders, until, about the 21st day of October, 1852, when he departed this life, dying intestate, and leaving him surviving his widow, Mary Augusta and the plaintiff in this action, his only son and heir, who became twenty-one years of age on or about the 1st day of February, 1862. That the said Mary [Augusta was duly appointed administratrix of the goods, chattels and credits which were of her said late husband, and having duly qualified, letters of administration were issued to her in the month of January, 1853, and she has been and acted as the sole administratrix. That at the time of the death of the said David D. Marvin, there were no debts owing by him outstanding and unpaid.

That afterwards, and in the year 1857, the said Mary Augusta, intermarried with Thomas C. Fanning.

That while the said David D. Marvin was so confined in the Butler Hospital, and in the month of March or April, 1851, he was requested to write his name at the foot of an instrument laid before him, and he so wrote his name without reading the paper, or hearing the same read, or inquiring as to, or knowing the contents thereof. That the said instrument was a partially prepared assignment of the bond and mortgage first aforesaid, and being, when so signed by the said David D. Marvin, in blank, as to the name of the assignee. That the person, at whose request the said David D. Marvin so wrote his name, brought the said instrument, so in blank, to the city of New York, and afterwards, on the 7th day of May, 1851, attended at the office of a commissioner of deeds in said city, and while there affixed his name thereto, as subscribing witness, and thereupon, as such witness, proved the execution of the said instrument before the said commissioner, who indorsed his certificate of such proof thereon.

That afterwards, without the knowledge or consent of the said David D. Marvin, the name of Susan M. Whittlesey wat inserted in the said instrument, as the assignee, and within a few days thereafter, the same was recorded as an assignment of the first mentioned bond and mortgage in the office of the register of the city and county of New York, on the 15th day of September, 1851.

That the said instrument, so purporting to be such assignment, was not delivered by the said David D. Marvin, nor authority given by him for the delivery, completion or use thereof, nor did the said David D. Marvin, make any arrangement in respect thereto, or receive any consideration therefor. That the said instrument was never delivered to the said Susan M. Whittlesey.

That afterwards the said Susan M. Whittlesey executed, upon request, an assignment of the said first mentioned bond and mortgage, and other assignments thereof were executed, and were recorded in the said register's office,

including the assignment to the said William Inglis, in the complaint stated, and under or by virtue of which he received the money aforesaid. That afterwards, and in the year, 1863, the said William Inglis departed this life, leaving a last will and testament wherein the defendant Margaret Inglis was nominated executrix, and the said will having been proved and admitted to probate, letters testamentary were duly issued to her, and she became and is the sole acting executrix under the said will.

That the said William Inglis left a large estate, which passed to and is possessed by said Margaret Inglis, as such executrix.

That at the time the said David D. Marvin so wrote his name at the foot of the said instrument, so afterwards converted into an assignment of the said bond and mortgage and recorded, he was of unsound mind, and incapable of executing a legal instrument.

That on or about the 1st day of September, 1865, the said Mary Augusta, as such administratrix and in her own right, sold, assigned and set over to her son, the plaintiff in this action, the said bond and mortgage, and the moneys which were due thereon and the claim upon which this action was brought.

That when such assignment was made, her said husband, Thomas C. Fanning was present, read and approved thereof, and that the same was so executed by the said Mary Augusta with his approbation and assent.

That soon after the execution of the said assignment and before the commencement of this action, the plaintiff caused notice thereof to be given to the defendant, and a demand to be made upon her for the moneys claimed in this action, and that she account therefor, which she refused to do. That I have computed the interest on the amount of the said claim, and that the same at the date of this my report amounts to $901.87, in the whole, for principal and interest, $1,746.43.

*And I find as my conclusions of law :—*

(1.) That the said instrument so signed by the said David D. Marvin, and in which the name of S. M. Whittlesey was afterwards inserted, as the assignee of the said bond and mortgage, was not the deed of the said David D. Marvin, but was and remained inoperative and void.

(2.) That the said David D. Marvin was and remained the owner of the said bond and mortgage up to the time of his death.

(3.) That the said William Inglis did not, under or by virtue of the assignment held by him, become the owner, or acquire any title or interest in the said bond and mortgage, or to, or in the moneys due thereon and so received by him.

(4.) That the plaintiff, at the time of the commencement of this action, was the owner of the claim on which this action was brought.

(5.) That out of the moneys and property, portion of the estate of the said William Inglis, which came into the defendant's hands, or under her control as executrix, under the said will, she should account for the moneys so received by the said William Inglis, with interest thereon.

(6.) That plaintiff is entitled to judgment against the said defendant, as such executrix, for the sum of $1,746.43, with the interest from the date hereof, with costs, and that the defendant, as such executrix, pay and satisfy the same out of any portion of the said estate not heretofore by her, as such executrix, applied to the payment of the existing debts of the said testator.

Dated, June 27th, 1868.

PHILO T. RUGGLES, *referee.*

The defendant has made and filed the following exceptions to the referee's report:

1st. The defendant excepts to so much of the referee's

findings of fact, as commences with the paragraph "that while the said David D. Marvin" and ending with "Susan M. Whittlesey," at the close of the third paragraph therefrom, and the third paragraph thereafter.

The evidence showed that Mary Augusta, the wife of Dr. Marvin, was his attorney, in fact, attended to his business, disposed of his property and collected his debts with his knowledge and approbation, and that Dr. Marvin was always lucid when said Mary Augusta visited him, once a fortnight, and that Mrs. Marvin prepared the assignment to Susan M. Whittlesey, and which D. D. Marvin duly executed, the execution whereof was duly proved by the subscribing witness.

2d. The defendant excepts, because the referee did not find as requested; that said Mary Augusta, after she became administratrix of her husband's estate, ratified the assignment of said bond and mortgage to John Anthon by her acquiescence therein, from her appointment as such administratrix, in January, 1863, to the 1st day of September, 1865, and also by her receiving one thousand dollars on account of such assignment.

3d. The defendant excepts to each conclusion of law made by the referee severally.

4th. The defendant further excepts, that the referee did not dismiss the complaint, upon the reasons upon which he was requested so to do, to wit:

1st. That Mary Augusta, as the attorney in fact of her husband caused to be made a valid assignment of said bond and mortgage to John Anthon, and received the pay therefor when administratrix, and ratified the same.

2d. That the assignment to the plaintiff is void because not executed by Thomas C. Fanning, the husband of Mary Augusta, and inadmissible in evidence because not acknowledged by Mrs. Fanning according to law.

3d. As administratrix she could not assign any trust confided to her, nor any tort, and that the assignment by the

administratrix was nothing more than the naked right to maintain a suit, which is unassignable.

*4th.* That the action could not be maintained by the administratrix, and the plaintiff could not have a better action, than his assignor.

*5th.* The plaintiff could in no event recover judgment for interest, or for more than $843.56, the amount received March 25, 1853, and that the plaintiff has not complied with the statute, and should therefore pay the defendant's costs.

A. & M. S. Thompson, *attorneys, and*
A. Thompson, *counsel for appellant.*

I. The referee was requested to dismiss the complaint for five reasons, which appear in the case from 104th to 107th folios. He impliedly refused, and the appellant excepted. If either of these reasons is sufficient, the referee committed an error, reviewable in this court (9 *N. Y.*, 463). Because :

1st. The troublesome question of reviewing the findings of fact of a referee is mostly put at rest, and the contradictory decisions upon the subject are harmonized, by the able decision given by the Monroe general term, in *Nelson* agt. *Ingersoll*, (27 *How.*, 1,) and which is in accordance also with the decisions of this court in 16 *N. Y.*, 547; 21 *N. Y.*, 547; and 22 *N. Y.*, 325 ; but see 20 *N, Y.*, 521, 522.

2d. This decision of *Nelson* agt. *Ingersoll*, establishes that § 272 of the Code, directing the mode of trial before a referee and in effect of the report, is thereby assimilated to trials at the circuit, as far as practicable, and the same to be reviewed, as far as practicable, in the same manner.

3d. The court of errors decided, *in* 7 *Hill*, 529, that a nonsuit might be given after all the evidence was given on both sides, and the Code practice has not overruled that decision, and our motion was thus made. (25 *N. Y.*, 361, *confirms this.)*

4th. About all the facts are proved by the plaintiff's witnesses, and there is no contradiction; and these facts are set forth in the statement of facts heading these'points; and the referee's findings of fact state the acts that were committed; the testimony shows particularly who were the actors in those transactions.

II. The fourth ground upon which the referee was requested to dismiss the complaint, was passed upon by the supreme court, and the opinion assumes that the administratrix could maintain an action. In this we claim, both the referee and the supreme court erred, because,

1. The facts established show, that every thing complained of, was done by the instigation and procurement of Mary Augusta, the then wife of Dr. Marvin, and who in January, 1853, became administratrix of his estate.

2. If Dr. Marvin had sufficient intellect to make the assignment, under the undisputed decisions in 4 *Cowen* 207, 21 *Wendell* 142 and 24 *Wendell* 85, then the ownership of neither Anthon, nor Judge Inglis could be impeached by Mrs. Marvin, as shown by those decisions.

3. The evidence shows that Mrs. Marvin was the agent in fact, of her husband, and recognized, as such by him and that he knew she was disposing of his property when apparently lucid; and the law allowed her to act as his agent. (9 *N. Y.* 40 *and* 205, *and* 42 *Barb.*, 194), and in case of lunacy would empower her so to do. (4 *Law and Eq.*, 523.)

Under such circumstances she could not recover in this action, as the facts show that she disposed of a deed for 7 lots of land, and this assignment and bond and mortgage for $1,000, and received, and still has the money; while Anthon (and Judge Inglis his assignee,) received the same for full value and *bona fide*.

4. But whether Mrs. Marvin rightfully or wrongfully procured the assignment of this bond and mortgage, and caused it to be assigned to Anthon for value, when, in January, 1853, she became administratrix of her husband's estate, she

then became liable to account to her husband's estate for the same, (7 *Paige*, 112), and the bond and mortgage is by statute so much money in her hands, which she cannot dispute. (2 *R. S.*, 84, 85.)

5. Being thus liable, she cannot make an innocent party account for her liability (or wrong if there be one).

6. She could not, as supposed in the oppinion, maintain an action for money had and received, for money received *bona fide* by Judge Inglis, under the decree of the court, for there was no contract, expressed or implied, to pay her money, and Judge Inglis committed no tort to be waived; and she could not give herself an action by waiving her own tort.

III. The first ground, upon which we asked the complaint to be dismissed; and the request that the referee find "that said Mary Augusta, after she became admidistratrix of her husband's estate, ratified the assignment of said bond and mortgage to John Anthon by her acquiescence therein, from her appointment as such administratrix, in January 1853, to the first day of September, 1865, and also by her receiving $1,000 on account of such assignment, are also good grounds for the reversal of the judgment appealed from, because :

1. Mrs. Marvin not only instigated all the acts complained of, but she received the benefits of the acts, when administratrix; she, when administratrix, with full knowledge of the facts, did not repudiate the acts of herself while a wife, or those acting with her. She took the money, and thereby accepted the whole burdens which accompanied it. (*Per* Hogeboom J., 35 *How.*, 214 *and* 115.)

2. The referee was requested to find this fact, and to dismiss the complaint on that fact; the referee refused. The defendant's exception carried this to the supreme court, the same as the refusal of a circuit judge. (27 *How.*, 4; 22 *N. Y.* 325.) The supreme court were bound to grant a new trial for that reason. (22 *N. Y.*, 325.)

The supreme court, have, by disregarding the exceptions, refused to grant the new trial, and they are available in this court. (22 *N. Y.*, 325.)

The conclusions of law are not correct, when the finding requested, is inserted, and therefore the exceptions to the conclusions of law, are well taken ; and there being no conflict of testimony, the conclusions from facts proved, are questions of law, reviewable in this court. (9 *N. Y.*, 463.)

*4th.* The defendant could set up the facts of this case as an equitable defense, to defeat any action Mrs. Marvin could bring. (2 *Kernan,* 166 ; 24 *N. Y.*, 581, *&c.*; 2 *Kernan,* 266.)

The party must offer to restore, before action. *(See* 2 *Barb.,* 145 ; 2 *Hill,* 288, 390 ; 3 *Greenlcaf,* 30 ; 1 *Denio,* 69 ; 4 *Denio,* 554 ; *Chit. Cont.,* 678, 752 ; 5 *East,* 449 ; 4 *Mass.,* 502 ; 15 *Mass.,* 320 ; 5 *Barb.,* 319 ; *See also,* 1 *Barb.,* 230, *and Exp.,* 103.)

*5th.* It cannot be urged that Mrs. Marvin's accountability to the estate is not sufficient to save the estate harmless. Since 1853, there has been over $3,000 net in her hands, more than sufficient to refund the money received by Judge Inglis *(See* 2 *Paige,* 253 ; 7 *Law and Equity,* 254 ; 2 *Ex. Rep.* 487 ; 4 *Ex. Rep.* 17, *and* 11, *Paige,* 480.)

IV. The plaintiff cannot maintain this action, because,

*1st.* He could not have a better action than Mrs. Marvin, his assignor.

*2d.* Judge Inglis received his money pursuant to the decree of the supreme court, and in that suit at the bottom of the decree the claim should be settled.

V. The third ground to dismiss the complaint was well taken, because,

*1st.* If there was a claim in favor of the estate, the collection of it was a trust, and trusts are not assignable.

*2d.* Judge Inglis is charged with a tort, and the paper purporting to be an assignment authorizes the plaintiff to

sue for such tort, and the complaint is (when stripped of all surplusage,) for a tort, " and no torts are assignable, unless there be a property to assign, or a contract at least, some substantial possession, some capability of personal enjoyment and not a mere naked right to maintain a suit" (as in this case.)   (2 *Story's Equity Jurisprudence*, § 1050 *g*. *See* 2 *Com.* 296, *per* HOYT.)

VI. The second ground for dismissing the complaint was well taken, because,

1*st*. Fanning's marriage with Mrs. Marvin, administratrix, devolved the whole administration upon him, and her grants were void, and so it is held in numerous cases, (2 *Williams on Executors on* 632, 633, *and* 634 *ps., and which doctrine is stated in* 2 *Bradford*, 155, *in the year* 1852) one case quoted in the opinion, referring to these, and other cases with approbation; and these cases have never been overruled.   8 *Paige*, 37, *also cited in the opinion*, was a power in trust, where a woman always acted under the power without her husband.   5 *Selden*, 40, also quoted, was a wife acting by the husband's direction, executing a mortgage upon his individual property.

2*d*. Frank Wilcox's testimony does not help the case, for in 19 *Law and Equity*, 330, an administratrix married a minor, who joined with her in an assignment, which was held a nulity, and that the wife could not assign without a valid concurrence of her husband.

3*d*. 4 *Comstock* 9, decided, that all deeds executed by married women should be on examination separate and apart from her husband; this decision has been modified since, respecting married women's separate estate; but has not been altered in other cases.

4*th*. The opinion states truly, that this objection was not taken by answer; and it could not be; but these objections were taken as soon as the purported assignment was offered in evidence, and has never been waived.

The opinion contains a mistake on this subject.

*5th.* The Laws of 1867, p. *1926,* authorizing married women to become administratrixes, and act as *femes sole* is not retrospective, and has no bearing on this purported assignment, executed in 1865.

VII. The fifth exception was well taken, because,

*1st.* The defendant is an executrix, and is not chargeable with costs unless she unreasonably resisted or refused to pay the plaintiff's claim. Upon being shown a letter from the plaintiff, respecting this stale claim, she said she wished to see Mr. Walgrove, that she knew nothing about it, and the action was commenced. It is claimed that the plaintiff is not entitled to costs. She did not unreasonably resist, or refuse to refer. (*See 3d Sandford* 758; 2d *Rev. Stat.* 90, § 41, *new* § 46.)

*2d.* As Judge Inglis took an assignment for value and *bona fide* from Anthon, the executrix could not be liable for the money received by the decree of the court, until after a demand and refusal, and the report being for the whole amount received March 25, 1853, and interest from that time to the date of the report, is erroneous.

VIII. The first four folios of the opinion have not been by us referred to, as we do not understand what they relate to ; we did not attempt to introduce the overruled demurrer before the referee, but objected to it ; but if it be intended that we were precluded by the result of that demurrer from setting up new matter, or moving to dismiss the complaint, we submit that that view is not sustained by the Code, or by 7 *Hill,* 529.

IX. The judgment appealed from should be reversed, and as it appears that the plaintiff can in no case maintin an action, the complaint should be dismissed with costs.

JOSEPH NEILSON, *attorney and counsel for respondent.*

I. The paper signed by Dr. Marvin, and afterwards used as an assignment of the bond and mortgage, was inoperative

and void; created and conferred no right or interest whatever:

1. Because it was signed in blank; no party thereto as assignee. (*Chauncey* agt. *Arnold*, 24 *N. Y.*, 330; *Drury* agt. *Foster*, 2 *Wal.*, *U. S.*, 24.)

2. Because it was thus blank when proved, as if by a subscribing witness, there realy having been no such witness. (6 *Hill*, 303; 2 *Wend.*, 575.)

3. Because the name of Susan M. Whittlesey was inserted as the assignee, after such proof before the commissoner, and without authority.

4. Because the paper was never delivered.

5. Because, at the time of signing this paper, Dr. Marvin was incompetent. (*Van Guyslin* agt. *Van Kuren*, 35 *N. Y.* p. 74 *of Op.*; *Haviland* agt. *Hayes*, 37 *N. Y.*, 25; *Stewart, Ex'r*, agt. *Lispenard*, 26 *Wend.*, 225.)

This last case is referred to in support of the natural view that one unfit to transact business, as by making a contract, may be competent to make a will. It is proper to say, that that case was criticised in 25 *N. Y.*, 9, but not touching the point to which it is here cited.

II. The assignment to Whittlesey being void and inoperative, nothing passed to Mr. Inglis by the transfer executed to him.

The distinction between the transfers of claims negotiable and not negotiable supplies the needful argument. In the one case, from considerations of commercial convenience and necessity, the party receiving paper in good faith and for value being protected, notwithstanding the want of title in the prior holder; in the other, the party taking an assignment of a chose in action being protected, not merely because of the meritorious character of his own act, but, more especially, because of the meritorious character of his assignor's title.

While this distinction has been long and generally recognized, this court, in view of its value and importance,

has been carefully reiterating that branch of the doctrine with which we are here most concerned.

In *Blydenburgh* agt. *Thayer, January term* 1867, DAVIES *Ch. J.,* cites 32 *N. Y.,* 482; 22 *Id.,* 535; 28 *Id.,* 600; *and* 1 *Johns.,* 529,) the general rule re-asserted being—

" *The assignee of a chose in action not negotiable takes sub-ject to all equities, and can acquire no greater or other rights than those possessed by his assignor.*"

Thus, then, it follows that Mr. Inglis stood in the same relation to the owner of this bond and mortgage as Miss Whittlesey. He could take no other or better title or interest than she had; nor, unless the distinction alluded to be disregarded, could he claim any benefit or advantage from the fact that he parted with value upon receiving the assignment.

It is the case of a purchaser attempting to get title from one having no title to give.

Nor is it material whether or not he was ignorant of the real character of the prior assignments.

The question presented was not one of mere equities latent or otherwise, but was a question of title.

Nor can it be said that William Inglis was a *bona fide* purchaser. *A bona fide purchaser* is one who unites in himself *the legal* as well as the equitable title. (*Peabody* agt. *Fenton,* 3 *Barb., Ch. R.,* 464–5.)

When Mr. Inglis received the money he got something valuable, and not until then. As it was received without right, or upon an unfounded claim, a court of equity could correct that.

As Mr. Inglis could not have retained the money, simply because it came to him thus, so neither should the defendant retain it as part of the large estate now in her hands as executrix.

III. No error was committed by the referee in his rulings at that trial.

I propose to notice the questions raised by the defend-

ant's counsel, in the order in which they appear in the case. I believe it would be found, if the examination could be here made, that the referee, whose learning and experience, especially in equity cases, are well known to the court, has given to those questions proper attention; and that this litigious executrix is troubling us and the courts most improperly and vexatiously.

*The first exception.*

The record of the determination of the court below, upon the demurrer to the complaint was properly, necessarily before the referee. Apart from the admission peculiar to the demurrer, it was determined at the special and general terms of that court that this was a good complaint; that this claim was the proper subject of assignment; and that upon the facts, it truly stated (facts now established by proof,) it was a proper case for an accounting. One of the learned counsel's most specific propositions was, that this was an action for an improper appropriation of the bond and mortgage, and that, being a tort, was not assignable.

If the court had been of that opinion, judgment for plaintiff would not have been ordered.

But one ground of the demurrer was a defect of parties, and the same ground was afterwards taken in the answer. For this reason, if for no other, the demurrer book should have been laid before the referee.

It will be assumed that the referee did not allow himself to be unduly influenced by that record.

The defect of parties, if such defect there were, appeared on the face of the complaint. Therefore, it was not a subject proper to an answer. To raise the question at all, the counsel was bound to demur; he acted on that view when he put in the demurrer. If he had faith in the proposition, he should have clung to it; not waived it by answering. This is something more than a mere point of practice; is regulated by the Code; is essential to the orderly prosecution of a defense. This party has properly tried the

Marvin agt. Inglis.

experiment by a demurrer; has improperly tried the same experiment by the answer. (*Merritt* agt. *Walsh*, 32 *N. Y.*, 685; *Donnell* agt. *Walsh*, 33 *N. Y.*, 43.)

*The second, third and fourth exceptions.*

The first question put was to obtain a mere description of the paper. The other proofs went to the contents, and that was proper, as the paper could not be found.

The record copy put in was the best evidence within our reach. We had alleged that Inglis appeared of record and thus got the money; therefore that record was proper evidence.

But efforts to find the paper had been made. The defendant's counsel proved that he had searched everywhere, and failing, had employed others to search. The plaintiff's counsel proved that he had made like dilligent search.

If a mere layman, who might err as to the measure of diligence due to such a matter, had thus testified, and the objection had been specific, the referee would have required the witness to state precisely what he did, and would then have determined whether the search was sufficiently full and diligent. But when counsel of some experience thus testify, I think it will be taken that the rule was fully met and satisfied.

It does appear that the assignment was in the hands of the broker Lathrop, and that he is dead.

Mr. Anthon acted on the record, hence it is that we still have the deed. If he had the original assignment, he would naturally have delivered it to his assignee. The call to produce was made on that theory.

Miss Whittlesey could not have delivered it to Mr. Anthon, as it never had been delivered to her.

*Fifth exception.*

The motion to strike out deserves no consideration. The question (like several of the objections made,) was presented in the most general form, and therefore, not available.

*Sixth exception.*

The motion merely went to the merits generally.

I have passed over several objections, as no exceptions were taken.

*As to the exceptions to the report.*

*First exception.*—The matters in the part of the report referred to were proved conclusively. The residue of the exception rests upon a misapprehension of the facts. There was no agency touching this matter. Mrs. Marvin did not prepare the assignment or insert Miss Whittlesey's name, though she did so as to the deed. She had no connection whatever with the arrangement made with Anthon.

*Second exception.*—If the request to find, &c., had been made, the exception would not hold. The bond and mortgage were used with Mr. Anthon without Mrs. Marvin's knowledge or consent, and that, too, in the lifetime of her husband. In the very nature of the case there could be no acquiescence or ratification.

She had received nothing on account of the mortgage; the $1,000 was for the lots.

The second and third exceptions as to *conclusions of law.*

The objection was that the administratrix, who had married after her appointment, could not execute this assignment to the plaintiff.

When that assignment was offered in evidence, certain specific objections were made.

The referee reserved his decision. Afterwards, and after further proof, the paper was put in evidence, without objection and without exception.

The inference was that, in view of that proof, the objections were abandoned. The referee might well have so understood it.

But the objection to the assignment was, at best, theoretical. It may be that, according to the English rule, the administratrix, on marrying, became so far incompetent that she could only act thenceforth with her husband. But the reason of that rule—the liability of the husband—does

Marvin agt. Inglis.

not exist with us, though, on an accounting, the husband should be brought in, since he may have intermeddled with the estate, or may have concurred in a *devastavit* committed by her. (*Elliot* agt. *Lewis*, 3 *Edw. Ch. R.*, 40–45.)

But we have a statutory system of our own. No one can read the provisions of the Revised Statutes without being impressed by the conviction that it was not intended that the husband of the administratrix, neither qualifying nor giving security, should take any part in the administration. On the other hand, there are several provisions which indicate that the wife should continue to act.

1 The person to whom letters are granted shall have sole and exclusive authority. (3 *Rev. St. p.*, 158, § 25.)

2. Upon such marriage, the letters may be revoked, on application of any party in interest. (*R. S. p.* 164, § 56.)

It was, therefore, for the persons in interest to determine whether she should continue to act or not; and the omission to make such application is evidence of an election in favor of such continuance.

As the letters are made conclusive evidence of authority, it would seem that, until revocation, her authority remained. She never was superseded by the action of the surrogate, the only mode known to our laws.

Marriage was an objection to the appointment of a woman. (*R. S. p.*, 159, § 32,) but we find no corresponding restrictions affecting one married after her appointment.

By the act of 1863, (*Sess. Laws, p.* 607,) married women might be appointed upon the written consent of the husband; and in 1867, (*Sess. Laws, p.* 1927,) all disqualifications were removed. By virtue of this act the rule stands as it the prohibitory statute had never existed. (*Washburn* agt. *Franklin*, 13 *Abb.*, 140.)

But, however, all that may be, all that would have been necessary, in any view of the law, was that the husband should, *assent* to the execution of the assignment by Mrs. Fanning.

It was upon that proof that the assignment was received in evidence; and that the objections which the counsel had raised were very properly abandoned by him. Not only should he have objected then, but excepted to the decision. (*Hunt* agt. *Bloomer*, 13 *N. Y.*, 341.)

*Third exception.*—This goes to the question whether the subject matter of this action could be assigned by an admin istratrix competen to act.

That question, if it be one, was before the supreme court upon the demurrer.

It was not the transfer of a trust, or of a tort, or a mere naked right to sue.

Claims which survive, though sounding in tort, can be assigned. The distinction is between a claim for a mere naked deceit, or for an injury which dies with the person, and therefore not assignable; and claims which, going beyond that, have to do with property, and therefore survive.

But this was a mere question of property as distinguished from a tort; is no more an action for a naked wrong than, in certain cases, the action on an implied assumption for money had and received would have been.

The notion that an administratrix cannot assign a bond and mortgage, or the money which another may have received upon a bond and mortgage, is not worthy of consideration. If that be the law, I confess to many violations of professional duty. I have so often seen executors and administrators, under my advice, pay off legatees and heirs who elected to take such securities, in lieu of money, and so to save the expense of re-investments, that I regret the correction comes so late.

It is to be remembered that as there were no debts owing by the intestate, Mrs. Marvin and the plaintiff were the only persons in interest. It was for them to determine what should be done with this bond and mortgage or this money.

Under the statute of distributions, part of it would belong to each of them.

The one has, for a consideration, passed over her interest to the other, and of that no one can complain.

*Fifth exception.*—This relates to interest and costs.

1. Interest.

That was but an incident. Why should not interest have been allowed? The bond and mortgage drew interest.

It is not the case of a mere agent or attorney holding money subject to call.

But a case where one obtains and holds money with a hostile though unfounded claim, and where a surrender of it would not have been made until compelled.

As this bond and mortgage drew interest and but for its perversion and use would now have been payable with interest; as Mr. Inglis had the money and the estate has had the benefit of the investment and accumulation; and as interest is the natural fruit of the money, the estate should account for the interest. Are we to be deprived of the interest which our bond and mortgage would have brought us? The Marvin estate suffers, the Inglis estate gains that much. What better claim has the defendant to the interest than to the principal?

2. As to the costs.

The question seems to be whether this litigious defendant can compel us to contest this claim for years, at our own expense, and so exhaust the fund and defeat the equitable object of the action. The history of the case illustrates her litigious temper.

The court at special term awarded costs on striking o the demurrer, and with leave to answer. On appeal t general term granted costs on the affirmance of that juc ment, without leave to answer, but with leave te move be allowed to answer. The referee awarded costs, and the appeal the general term affirmed that. Thus at ea

step in the case the defendant was admonished.  Was not the claim unreasonably resisted ?  (23 *How.*, 137.)

But this question of costs is not proper for the consideration of this court on appeal.

If costs were improperly inserted in the judgment the remedy was by motion for correction in the court below. (25 *How.*, 345.)

But this question was not raised on the trial.  (*Morris* agt. *Husson*, 8 *N. Y.*, 204.)

If any offer to refer, or certificate by the referee, or order of the court upon motion allowing costs, were necessary, it does not appear but that the same were duly made.

But the fifth exception, as to the interest, and costs is not well taken.  It is a compound proposition, to the effect that the plaintiff could not recover interest; that he could only have the principal; that he had not complied with the statute, and that he must pay costs.  Neither of these several propositions appear to have been submitted to the referee prior to the report.

As the case does not contain the referee's findings there is nothing before the court for review, unless it be as to the specific exceptions taken on the trial.  (31 *N. Y.*, 115; 16 *N. Y.*, 610; 15 *Abb.*, 75.)

The judgment should be affirmed, with costs.

GROVER, J.—None of the exceptions taken by defendant's counsel to the rulings of the referee upon the competency of evidence were insisted on upon the argument.  I have examined these exceptions and find none of them tenable.

There was evidence given tending to sustain the finding of the referee, that David D. Marvin, at the time he signed his name to the instrument purporting to be an assignment of the mortgage, was of unsound mind, and incapable of executing a legal instrument.  This finding of fact is, therefore, conclusive upon this court in this case.

It follows that such instrument is void, unless made

valid by some other fact in the case. (*Haveland* agt. *Hayes,* (37 *N. Y.,* 25.) The counsel insists that the assignment, although void when executed by Marvin, because valid by reason of Mrs. Fanning's (Marvin's then wife) agency in conducting and managing the affiars of her husband, and in procuring the execution of the instrument by him. It is a sufficient answer to this position, that a person mentally in capable of transacting business cannot appoint an agent to transact it for him, and that the act of the agent appointed by such person would be equally void. Besides, Mrs. Fanning never assumed to act as agent for her husband in respect to the assignment of the mortgage in question.

The counsel for the appellant excepted to the refusal of the referee to find as a fact, that Mrs. Fanning, after she became administratrix of her husband's (Mr. Marvin,) estate, ratified the assignment of the bond and mortgage by her acquiescence therein from her appointment, in January, 1853, to the 1st of September, 1865, and also by her receiving one thousand dollars on account of such assignment.

It may be assumed, and such is, I think, the law, that an exception taken to the refusal of a referee to find a fact material to the rights of the party established by unconflicting proof is available in this court, as such refusal would be an error of law. Testing the exception by this rule, it is manifest that if no title to the mortgage was conveyed by the assignment in the lifetime of Mr. Marvin, such title could not be conveyed by any delay of his personal. representatives after his death in asserting their right thereto; such delay might, if sufficiently long, bar the remedy by the operation of the statute of limitations, but this would be its only effect. The delay was therefore, immaterial. The evidence as to whether Mrs. Fanning, either before or after she became administratrix, ever received anything on account of the assignment of the mortgage was conflicting, and the refusal of the referee to find that she had received anything on account thereof, after she became administratrix, was justified

upon this ground.   The exception was, therefore, not well taken.   The evidence tending to establish that Mrs. Fanning, while administratrix, ratified the assignment by receiving money on account thereof, must be disregarded by this court, as the fact was not proved to the satisfaction of either the referee or the supreme court.   It follows that the assignment was not rendered valid by any other fact occurring, either before or after the death of Marvin, and that the ownership continued in him to the time of his death, and then vested in his personal representatives.

It is insisted by the counsel for the appellant, that the defendant's testator purchased the mortgage from Anthon in good faith, and that Anthon, having an apparent valid title by virtue of the assignment, the testator by such purchase acquired a valid title.   Conceding the fact, the legal conclusion does not follow.   The law is well settled that a purchaser of choses in action, other than such as, by the law-merchant, are negotiable, acquires no better title than that of his vendor.   (*Blydenburgh* agt. *Thayer, and cases cited.*)   The title of the testator was, therefore, no better than that of Miss Whittlesey, whose name was inserted as assignee in the first instance.

It is also insisted that Mr. Anthon, the assignor of the testator, was a necessary party.   It is a sufficient answer to this position, that the appellant is not in a position to raise the question.   The defect of parties, if any, appears upon the face of the complaint, and in such cases the question can only be raised by demurrer.   (*Code, sections* 144–147; *Depuy* agt. *Strong, supra.*)   It is, therefore, unnecessary, to inquire whether Anthon was a necessary party.

It follows that the personal representatives of Marvin could have maintained an action against the defendant's testator to recover the mortgage, and, when he had received the money secured thereby, to recover from him the money so received.   This liability of the testator survived against

Marvin agt. Inglis.

his personal representatives, (*Haight* agt. *Hoyt*, 19 *N. Y.*, 464,) and was assignable, like any other chose in action which survived in favor of and against personal representatives. (*Bixbie* agt. *Wood*, 24 *N. Y.*, 607.) It is insisted that the administratrix had no power to assign this claim to the plaintiff. To this I answer, that she had the same power to assign and transfer this, that she had any other chose in action, or to sell any of the personal property of her intestate. It is further insisted, that by her marriage with Fanning, her power to assign and transfer, without the assent of her husband, ceased. It is not necessary to determine this point, for the fact is found that the administratrix executed the assignment to the plaintiff in the presence of, and with the assent of her husband. This made it his act, if that be necessary to its validity. (*Edgerton* agt. *Thomas*, 5 *Sel.*, 40.) The plaintiff was clearly entitled to recover interest. The money had been illegally received by the testator upon the mortgage, and retained by him and his representative, and his estate is chargeable with interest as damages. The fact that the testator received the money upon a decree in a foreclosure suit, to which he was made a party by reason of his apparent ownership of the mortgage, does not affect the right of the plaintiff; neither he nor his assignor was a party. This right to the mortgage or its proceeds could not be affected by the judgment. The mortgage was not paid out of a surplus arising upon the sale, the right to which was determined subsequent to the judgment, but its payment was directed by the judgment. The exception is too general to raise any question as to defendant's liability for costs.

The judgment appealed from must be affirmed, with costs.