(18 Misc. Rep. 18.)

### CARRERE v. DUN.

(Supreme Court, Appellate Term, First Department. September 28, 1896.)

EVIDENCE—DECLARATIONS OF AGENT.

    Defendant, who was a member of a firm, requested one G., the bookkeeper of the firm, to go over defendant's individual books. G. replied that he was busy with other matters, and would rather have plaintiff, a subordinate bookkeeper, do it. Defendant said he had no objection, and G. told plaintiff what had occurred. Plaintiff went over the books and made a statement showing the result. The only direct communication between plaintiff and defendant was that defendant gave plaintiff two papers to use in making up the statement. There was no evidence

that G. was a general agent of defendant. *Held,* that it was error to admit in evidence statements made by G. to plaintiff to the effect that defendant would pay extra for such services, and it was immaterial that plaintiff worked on the books on holidays and in the evenings, where defendant was not aware of that fact.

Appeal from city court of New York, general term.

Action by Fannie E. Carrere against Robert G. Dun. A judgment in favor of plaintiff was affirmed by the city court (40 N. Y. Supp. 372), and defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Douglass & Minton (J. B. A. Mullally, of counsel), for appellant. James A. Gray, for respondent.

McADAM, J. The action is by the plaintiff, as assignee of William Carrere, to recover for services alleged to have been rendered by him in going over certain books of the defendant and making up a statement therefrom. The defense relied upon was no employment, and the absence of any agreement on the part of the defendant to pay for the services rendered.

These are substantially the facts: William Carrere was an accountant, employed by R. G. Dun & Co., of which firm the defendant was senior member. The defendant wanted some of his individual books gone over, and requested Mr. Greene, another of the firm's employés, to do the work. Greene replied that he was so busy with other matters that he would rather Carrere would do it. The defendant said he had no objection, whereupon Greene went to Carrere, and told him what had occurred. Carrere examined the accounts, and made out a statement showing the result, which was furnished to Greene, and by him delivered to the defendant. While the work was going on the defendant inquired how it was progressing, and gave Carrere two slips of paper, one containing 21 items, and the other 25 names, relating to the particular accounts about which the defendant wanted information. This is all that passed between Carrere and the defendant. The former then had the opportunity to make known that he expected extra pay, but not a word was said about extra compensation, or doing the work out of business hours or away from the place of business; so that there was nothing from which the defendant could infer that any claim for extra pay would be made.

The facts disclosed fail to establish a cause of action. To hold that the circumstances stated implied an independent obligation on the part of the defendant to pay for the work done would be unprecedented. In almost every firm each member has individual books or accounts, and conducts more or less correspondence, and it would be a startling proposition that, if he requests one of the firm employés to write up his books, copy a letter, make a deposit in bank, or deliver a message, there is an implied obligation to pay the employé therefor in addition to his regular compensation from the firm. Yet that is what the court must decide in order to sustain this judgment. Carrere was not an occasional, but a regular, employé of the firm, engaged at an annual salary of $2,000, and

his duties required him to do whatever work upon books or accounts the firm required of him. The fact that the work in this instance was on the private accounts of one of the firm makes no difference in the legal result, for any member had the right to command his services within the scope of his employment. In order to be entitled to extra compensation, the service must be such as the servant is under no obligation to perform; for, where a person is bound to do an act, and his duty either at law or under a contract is fixed, a promise to pay an increased rate of compensation for doing what his duty requires him to do is a nudum pactum, and void for want of any consideration to support it. Wood, Mast. & Serv. (2d Ed.) p. 174.

The plaintiff also proved that part of the work was done away from the place of business of the firm on evenings and Sundays, but the case is destitute of evidence that there was any knowledge on the part of the defendant that the work was so done. An employé cannot, by taking work home which ought to have been done at the employer's place of business during business hours, conjure up a claim for extra pay. There must be some request on the part of the employer to depart from the customary course, or some approval thereof on his part, before he can be charged with impliedly contracting for extra compensation. Presumptively, the annual salary of an employé is the measure of his compensation for all work done by direction of the firm, acting through its individual members; and in order to rebut this presumption it must affirmatively appear that the work directed is so far out of the usual course, or is to be performed at or in such an unusual time or manner, that the law can safely imply that, in the nature of things, both parties must have known, and therefore contemplated, that extra compensation must follow as of course.

Wood in his work on Master and Servant (2d Ed., § 86) says:

"But in any event, if a servant employed for a term is required to labor an unreasonable number of hours each day, or to perform labor upon the Sabbath, he cannot recover anything for extra work during the term, unless there was an express promise to pay him therefor. His remedy, in case he is required to labor an unreasonable number of hours for a day's work, is to quit the service. If he does not, he can make no claim for extra compensation, unless it was promised to him by the master. All services rendered under a contract are deemed as having been included in it."

See, also, Smith, Mast. & Serv. (3d Ed.) 160; McCormack v. City of New York, 14 Misc. Rep. 272, 35 N. Y. Supp. 757.

"The general rule is that a contract will be implied only where there is no express contract. 'Expressum facit cessare tacitum.'" Story, Cont. (5th Ed.) § 18.

The plaintiff attempted, but failed, to prove an express contract to pay, and her right to recover rests solely upon the implications which flow from the facts proved, and these do not establish a right to extra compensation. To establish her case, the plaintiff undertook to show that Greene knew that the work was done away from the place of business, and that the latter had gone so far as to agree that extra compensation would be allowed. The plaintiff's assignor, after testifying that Greene told him that the defendant

requested that he should make out his private account, was inter
rogated as follows:

"Q. Now what reply, if any, do you make to that? A. I told him [Greene]
I would not do it except for pay,—additional pay,—and he and I agreed. Q.
What did you say and he say? A. He said I should be paid for it additional."

This, as well as all evidence of a similar character, was in every
instance objected to upon the ground that Greene's declarations
could not bind the defendant. The various objections were over-
ruled under exceptions specifically taken. There is nothing in the
record proving that Greene was a general agent of the defendant,
and the only inference deducible from the testimony is that he was
a special agent concerning the particular object in view.

"The distinction drawn by Paley is that an authority is general or special
with reference to its object,—i. e. according as it is confined to a single act,
or is extended to all acts connected with a particular employment. Story
adopts the same distinction. A special agency properly exists where there
is a delegation of authority to do a single act. A general agency properly
exists where there is a delegation to do all acts connected with a particular
trade, business, or employment." Ewell, Evans, Ag. 135.

In the case of a special authority, the agent's power is directly
derived from the principal, and limited accordingly (Id.); and if
it is transcended the principal is not bound (Story, Ag. § 126).

Greene and Carrere were fellow bookkeepers, and, though the
former was in a degree the latter's superior, there is nothing in
the position he held that carried with it the idea of a general agency
for the defendant, one of his employers, or that gave him implied
authority from the defendant to contract with fellow workmen for
extra compensation. He did not assume to deal with Carrere on
the basis of possessing such authority, for the very nature of the
transaction disclosed to the plaintiff's assignor that in this partic-
ular instance he was doing nothing more than delivering a mes-
sage to a fellow clerk from one of their common employers. As
Greene had no authority to contract for extra compensation, his
declarations in respect thereto were inadmissible to charge the de-
fendant. An agent may undoubtedly, within the scope of his au-
thority, bind his principal by his agreement, and in many cases by
his acts. What an agent has said may be what constitutes the
agreement of the principal; but, until there is some proof of au-
thority upon the part of the so-called agent, all declarations of his
must be rejected as incompetent. People v. Parish, 4 Denio, 153;
Howard v. Norton, 65 Barb. 161; Cow. Treat. § 159. Where such
evidence is admitted on the promise of counsel to supply the proof
of authority subsequently, and the required evidence is not given,
it has been held to be reversible error. Snook v. Lord, 56 N. Y.
605. Other cases hold that the aggrieved party should not rely
wholly upon the exception taken at the time, but if, when the evi-
dence is all in, the connecting links are not supplied, he must move
to strike out the objectionable evidence. Baylies, Trial Prac. 208;
Vinegar Co. v. Schlegel, 143 N. Y. 544, 38 N. E. 729. There was
no attempt to supply the missing link, and the defendant, follow-
ing the practice stated, moved to strike out Greene's alleged dec-
larations on the ground that they were not connected with the de-

fendant, and no authority to make them had been shown. This motion was denied, and an exception taken.

The objections made to the admission of Greene's declarations were well taken, and the exceptions to the rulings admitting them, and to the denial of the motion to strike out, are fatal to the judgment. If any fact material to the interest of either party rested in the knowledge of the alleged agent, it was to be proved by his testimony, not by his mere assertion. Tayl. Ev. § 540; 1 Greenl. Ev. § 114. Greene was finally called by the defendant, and denied that he had any authority to contract for extra compensation, or ever did so contract, or that he knew of any fact or thing calculated to create or justify any claim for extra pay.

In Garth v. Howard, 8 Bing. 453, Tindale, C. J., observed:

"It is dangerous to open the door to declarations of agents, beyond what the cases have already done. The declaration itself is evidence against the principal, not given upon oath. It is made in his absence, when he has no opportunity to set it aside, if incorrectly made, by any observation, or any question put to the agent; and it is brought before the court and jury frequently after a long interval of time. It is liable, therefore, to suspicion originally, from carelessness or misapprehension in the original hearer, and again to further suspicion from the faithlessness of memory in the reporter, and the facility with which he may give an untrue account. Evidence, therefore, of such a nature, ought always to be kept within the strictest limits to which the cases have confined it."

In 2 Phil. Ev. (Cowen, Hill & Edwards' Notes) p. 507, the author, in referring to the above observation, says, "There is less necessity for resorting to such evidence in the case of living agents" whose testimony may be procured; and, in summarizing the authorities in regard to the admission of that class of evidence (Id. p. 513), adds, "But it seems to be a more simple rule, with respect to admissions, that they are only receivable when there was authority to make them."

That Carrere had any real claim against the defendant would seem at least doubtful on a careful reading of the printed case, from which it appears that he was in great need of money, and was importuning the firm to assist him in consequence of certain private troubles; that it did assist him; that he executed to it a general release of all claims, never suggesting the existence of the demand which forms the subject of this suit until he had been discharged by the firm, and all chance of making further appeals to its generosity was at an end.

The plaintiff urged that, as the defendant made no request to direct a verdict in his favor, he consented to the submission of the cause to the jury, and cannot now complain of the result. The defendant made his legal objections as the trial progressed, and as they were decided against him he took the exceptions necessary to preserve his right to review them, and the subsequent submission of the cause, followed by the verdict rendered, did not eliminate these questions from the case, so as to prevent their examination. It is not the usual case wherein the affirmance by the general term of the city court prevents us from reviewing the facts or passing on the weight of evidence, but one where the proofs fail to make

out a cause of action, thereby presenting a question of law which we are bound to pass upon. Davis v. Spencer, 24 N. Y. 386, 390; Brush v. Lee, 36 N. Y. 49; Draper v. Stouvenel, 38 N. Y. 219; Marvin v. Inglis, 39 How. Prac. 329.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.