## JOSEPH A. GUTWEILER, Appellant, v. ALEXANDER E. LUNDQUIST, Respondent.

**St. Louis Court of Appeals. Opinion Filed January 7, 1919.**

1. **MASTER AND SERVANT: Contract of Employment: Extra Work: Compensation.** A servant employed at a stipulated wage cannot recover for extra work performed upon evenings or holidays, in the absence of evidence tending to establish a contract on the part of the master to make additional compensation therefor; the law implies no promise on the part of the master, to pay additional compensation for such extra work, by reason alone of a request to perform the same.

2. ———: ———: ———: ———: **Presumptions.** The presumption is that the stipulated wage received by the servant from the master constitutes full compensation for all the services rendered by him, and this presumption can be overcome only by evidence tending to show a contract, of some character, on the part of the master to make additional compensation.

3. ———: ———: ———: **Additional Compensation.** Where a servant employed at a stipulated wage made a demand for extra compensation for certain work, and he was promptly given to understand that no extra compensation would be paid, and he thereafter continued in the employment, renewing his contract each year, and continued to perform the same services for several subsequent years without further claim for compensation, *held* that he could not continue to accept the employment from year to year, at a stipulated compensation, knowing that such services were expected of him as an employee, and subsequently enforce a claim for extra pay therefor.

Appeal form the Circuit Court of the City of St. Louis.
—*Hon. Kent K. Koerner,* Judge.

AFFIRMED.

*Blodgett & Rector* for appellant.

One rendering valuable services for another, at the other's request, in the absence of an express contract, under circumstances which do not point to the fact that the services were to be rendered gratuitously, is entitled to a fair compensation for the services. Crain v. Miles, 154 Mo. App. 544-5; Swift v. Johnson, 175 Mo. App. 616; Voerster v. Kunkel, 86 Mo. App. 194; Lynch v. Bogy, 19 Md. 170; Fitzpatrick v. Dooley, 112 Mo. App. 165; Silver v. M., K. & T. Ry., 125 Mo. App. 402; Christianson v. McDermott, 123 Mo. App. 448; Lillard v. Wilson, 178 Mo. 145; Johnson v. Johnson, 166 Mo. App. 732.

*Nathan Frank* and *Richard A. Jones* for respondent.

(1) The record is void of evidence from which can be derived any contract to the end claimed by appellant, and the trial court should have directed verdict in favor of respondent and very properly granted new trial for failure so to do. (2) Appellant, during the period covered in his suit, was under contract of employment with Famous-Barr and respondent its department manager under whom appellant worked and from whom he received the instructions of his employer. The presumption is that all services performed were contemplated in the agreed wage to be paid by such employer, which presumption is only to be overcome by evidence of further express contract to the contrary. Insurance Co. v. Goodrich, 74 Mo. App. 355, 361, 366; Mathison v. N. Y. C. & H. R. R. Co., 76 N. Y. Sup. 89; Scharr v. Savigny, 85 Mich. 144; Haughton v. Kittleman, 7 Kas. App. 207, 209; Cooper v. Brooklyn Trust Co., 96 N. Y. Sup. 56; Murray v. Griffith & Son, 95 N. Y. Sup. 573.

ALLEN, J.—This is an action, instituted before a justice of the peace, for the recovery of $480 claimed to

be due plaintiff as the reasonable value for certain services rendered by him at the request of the defendant. The trial before the justice of the peace resulted in a judgment for defendant from which the plaintiff appealed to the circuit court, where, upon a trial *de novo*, before the court and a jury, there was a verdict and judgment in favor of plaintiff in the sum of $200. Thereafter the court sustained defendant's motion for a new trial upon the ground that the court erred in refusing to peremptorily direct a verdict for defendant; and the verdict and judgment were accordingly set aside. From the order thus granting a new trial plaintiff prosecutes the appeal now before us.

The services involved were rendered by plaintiff during the years 1910, 1911, 1912 and 1913. At the time of the rendition thereof plaintiff was a clothing salesman in the employ of the Famous-Barr Company in the city of St. Louis, and defendant was the manager of the clothing department of that company. It appears that both plaintiff and defendant were employed by the Famous-Barr Company in 1906. Plaintiff continued in this employment from 1906 until 1914, at which time he was discharged. It is said that he was shortly thereafter reemployed, or "taken back," and that he continued in the employment until some time in 1915 when he was finally discharged. The defendant, it appears, remained manager of the department in question from 1906 until the time of the trial below.

The services in question consisted of certain work performed by plaintiff twice a year in "codifying" certain inventory lists, or making a compilation therefrom. The evidence shows that twice each year the various clothing salesmen in this department prepared inventory lists of the "stock" which each salesman had in charge; these lists being intended to furnish information regarding the stock remaining on hand, upon which the manager, as buyer for the department, could act in purchasing goods. To use these separate inventories or lists was not convenient or expeditious, and it was customary to have a

compilation made therefrom which was used by defendant when he went to "market."

According to plaintiff's testimony he began making these compilations, semi-annually, in 1907, at the request of the defendant, manager of this department. Plaintiff testified that the making of this compilation was "a tedious job;" and that this duty required him to work evenings. He could not say, with any certainty, how many hours of labor he devoted thereto in the evenings, but stated that it required "from five to six, sometimes seven evenings," and that upon these evenings he worked at the task "from seven until eleven, twelve, one and two o'clock twice a year." He testified definitely that he performed this work from 1907 to and including 1913; and it also appears from his testimony and that of the defendant that he performed like services in 1914. He says that he did none of this work in 1915, "except one time," and this at the request of one Moeller, a "salesman foreman" in the company's employ.

The evidence shows that plaintiff was employed by the Famous-Barr Company under a contract whereby he received $25 per week and in addition thereto certain commissions upon clothing sold; and that there was a settlement every February between him and the company, whereby the matters between them were adjusted, and that plaintiff was reemployed under a similar contract in February of each year.

The evidence further shows that the work in question could only be done by a clothing salesman of some experience, familiar with such matters. According to the testimony of defendant plaintiff was selected and requested to do this work because of his experience and the fact that his handwriting was good. Though plaintiff began performing these services in 1907, it does not appear that he made any demand for extra compensation until 1910 or 1911. Defendant's testimony is that no demand for extra compensation whatsoever was made until plaintiff was discharged in 1914, when plaintiff threatened to "get even" with him. Plaintiff's testimony, however, is that either in 1910 or 1911 he

made such demand upon defendant, and that defendant told him, in substance, that no extra compensation was due him.  He says that he did not sue defendant at this time, or while he remained in the company's employ, for the reason that he would have lost his position if he had done so; and that he continued to perform the services as theretofore, making his annual settlements and entering into a new contract of employment with the company each year.

It appears that there was a table in the rear of the store, at which salesmen did such clerical work as their duties required; and that plaintiff frequently worked at this table, either in preparing his inventories or in working at these compilations.  There is no testimony in plaintiff's behalf that the defendant knew that plaintiff did any of this work outside of his regular working hours; and defendant's testimony is positive to the effect that he never knew that plaintiff devoted any time thereto in the evenings.  The evidence is that frequently the salesmen of the company were required to perform certain duties in the evening, and that for such "over time" they received nothing beyond an allowance of fifty cents for "supper money."

Appellant's learned counsel earnestly insist that the trial court erred in granting a new trial on the ground mentioned.  It is said that "one rendering valuable services for another, at the other's request, in the absence of an express contract, under circumstances which do not point to the fact that the services were to be rendered gratuitously, is entitled to a fair compensation for the services."  We have no occasion to question the general rule of law thus asserted; and it is unnecessary to discuss the authorities which are cited and quoted from in this connection.  The circumstances and the relationship between the parties were here such as to render inapplicable the general rule that, as between strangers or parties occupying no peculiar relation to each other, the law implied a promise to pay for valuable services rendered upon the request of the party for whom they are performed.  [See Wagner v. Electric Co.,

141 Mo. App. 51, 121 S. W. 329.] And we are of the opinion that the trial court did not err in granting a new trial upon the ground assigned.

The authorities announce the rule that a servant, employed at a stipulated wage, cannot recover for "extra work," performed upon evenings or holidays, in the absence of an express contract on the part of the master to make additional compensation therefor (see Carrere v. Dun, 41 N. Y. Supp. 34, and authorities cited); though it may be perhaps, that under extraordinary circumstances a contract to pay extra compensation may be inferred from all the facts and circumstances. [See 18 R. C. L. 534.] These services were not of such character as to be wholly foreign to the work which plaintiff was employed to perform. And the presumption is that the salary and commissions received by plaintiff from the company constituted full compensation for all the services rendered by him. [See Carrere v. Dun, supra; Insurance Co. v. Goodrich, 74 Mo. App. 355.] In the case last cited it was held, in effect, that this presumption could be overcome only by evidence of an express contract entered into by the parties. That an express contract to pay extra compensation, as distinguished from a contract to be inferred from all the facts and circumstances, must be shown in every case, we need not say. See, in this connection, McGregor v. Harm, 19 N. D. 599; 30 L. R. A. (N. S.) 649, and note. In the case before us the evidence does not show a contract, of any character, for additional compensation to be paid plaintiff either by this defendant or the company. Clearly there was no meeting of the minds as to this. Neither can it be said that the case is one where plaintiff throughout intended to charge, and defendant as a reasonable man must be held to have understood from the beginning that extra compensation would be expected (Wagner v. Electric Co., supra)—if this theory could, in any event, be invoked in a case of this general character. If plaintiff, prior to 1910 or 1911, contemplated charging for these services, defendant was not apprised thereof; and under the circumstances de-

fendant cannot be held chargeable with knowledge, during such period, that compensation would be expected. And when plaintiff made demand for extra compensation in 1910 or 1911, as he says, he was promptly given to understand that no extra compensation would be paid, as his own testimony shows. He thereafter continued in the employment, renewing his contract with the company each year, and continued to perform these same services during all of the subsequent years mentioned, without, it appears, making further claim for compensation. Obviously plaintiff could not continue to accept the employment from year to year, at a stipulated compen-. sation, knowing that these services were expected of him, as an employe, and subsequently enforce a claim for extra pay therefor. [See Mathison v. R. R. Co., 76 N. Y. Supp. 89.]

The fact that plaintiff worked at these compilations outside of his regular business hours, does not help his case, for the reason, if none other, there is no evidence that the defendant had any knowledge thereof. The only testimony touching the matter—that of defendant—is to the contrary. In this connection see Carrere v. Dun, supra.

Plaintiff testified that these compilations were made merely for defendant's personal convenience; but this was a mere conclusion on his part. Obviously the compilations were required by defendant for the more convenient and expeditious discharge of certain managerial duties devolving upon him by virtue of his position. To hold that under circumstances of this character a servant may hold a superior servant liable for services rendered, at the latter's request, in the course of the common employment in and about the master's business, would be a dangerous doctrine indeed. [See Carter v. Hall, 2 Starkie, 361.]

It follows that the judgment must be affirmed, and it is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.