MONROE v. ST. CLAIR CIRCUIT JUDGE.

PRIVILEGE FROM ARREST—ATTENDANCE ON COURT.

The rule of privilege from arrest, applicable to suitors and witnesses while in attendance upon the court and while going to and returning therefrom, cannot be extended to protect the vendor of a vessel, who is without the jurisdiction of his residence for the purpose of adjusting with the purchaser a libel filed by a third person against the boat. MOORE and LONG, JJ., dissenting.

*Mandamus* by John Monroe, Jr., to compel O'Brien J. Atkinson, circuit judge of St. Clair county, to release relator from arrest. Submitted June 12, 1900. Writ denied December 4, 1900.

*Avery Bros.*, for relator.

*Phillips & Jenks*, for respondent.

HOOKER, J. Monroe, living in the county of Charlevoix, owned a vessel. He sold and delivered her into the possession of Slyfield, who paid $100 in cash, and left a draft and other papers with Pratt & Davis, a law firm at Traverse City, to be delivered to Monroe upon his executing a proper bill of sale and a bond to protect Slyfield against liens. Sperry commenced a suit against the boat, for supplies, in the federal district court for the Eastern district of Michigan, and the boat was seized at Port Huron by the United States marshal. Slyfield conferred with Phillips, an attorney at Port Huron, to ascertain whether he could safely pay the claim, and was advised that he could not, and that Monroe had better authorize Slyfield to pay it, or come down to Port Huron and arrange it. Slyfield telegraphed Monroe to come, and he did so, whereupon he was arrested at the suit of one Bonnah, for whom Phillips was counsel. The circuit court refused to discharge him, which was asked upon the ground that he was privileged from arrest.

The privilege of a witness or suitor is to be found in the common law or our statute ( 3 Comp. Laws 1897, § 10157 ). The statute does not cover this case, for the relator did not attend as a witness. But the privilege of a party from arrest existed at common law, and has not been abrogated. This privilege applied to him while in attendance *upon the court*, and was a rule of public policy, based, not upon the welfare of the party, so much as upon the protection of the administration of justice; and it extended no further than to the period of his actual attendance upon some judicial proceeding or inquisition, and the reasonable time used in going to and returning from such tribunal. I am able to find no sanction for the doctrine that it protects a party while going away from his residence to consult counsel, whether at the place where the court is usually held or elsewhere; and no case

is cited which recognizes it while he is in such locality
for the purpose of settling his case.   The reason for this
privilege, and its nature and extent, are shown by numer-
ous cases cited in a note to the case of *Mullen* v. *Sanborn*,
25 L. R. A. 721 (79 Md. 364, 29 Atl. 522, 47 Am. St.
Rep. 421).   We do not quote from them, for the summary
can as well be read; but, in our opinion, neither the cases
themselves, nor the principle underlying them, sanctions
such an application of the doctrine as is sought here.   Nor
do the cases from Michigan justify it.   It is said that
"the right of a defendant to be sued at his domicile is not
a technical, but a substantial, right."   If this be true, the
same can be said of the plaintiff; *i. e.*, that his right to
sue a defendant away from his domicile, which he may
do under the statute, is not a technical, but a substantial,
one.   If the one is not to be deprived of a right by disre-
garding his privilege, the other is not, by extending it to
cases not within the rule or its reason.

In the case of *People* v. *Judge of Superior Court of
Detroit*, 40 Mich. 730, relator was arrested and taken from
his domicile to the place where he was sued.   He was
clearly protected under the common-law rule.   In *Mitchell*
v. *Huron Circuit Judge*, 53 Mich. 541 (19 N. W. 176), a
person attended court solely for the purpose of testifying
as a witness.   He was clearly within the statutory as well
as the common-law rule.   *Letherby* v. *Shaver*, 73 Mich.
500 (41 N. W. 677), was on all fours with *Mitchell* v.
*Huron Circuit Judge*.   In *Hoffman* v. *Bay Circuit
Judge*, 113 Mich. 109 (71 N. W. 480, 38 L. R. A. 663, 67
Am. St. Rep. 458), the rule was applied to counsel when
returning from a session of this court, where he had argued
a case.   He was protected both by statute and common
law.   The only case that seems to afford any support to
relator's contention is *Jacobson* v. *Wayne Circuit Judge*,
76 Mich. 234 (42 N. W. 1110).   The relator was let to bail
in the village of Vassar.   The next morning he went to
Detroit to consult counsel in relation to his arrest.   While
in his office he was served with process in favor of a non-

resident of the State. The court did not hold that he was privileged because he went to consult counsel, and clearly indicated that the holding would have been the same had he not desired to consult counsel. They say that "it appears that to go by Detroit [to his home in Greenville] was as convenient and usual as any other route," but that "this does not impress us as very significant, inasmuch as it was *a common line of travel*" (*i. e.*, between those places), and that "he had a right to see his regular counsel *on his way home*," and that "it cannot be treated as going *out of his way* to do so."

In the case before us there was no pretense that relator went to Port Huron to attend court, nor, for that matter, to see his regular counsel, or any counsel. There is nothing to indicate that court was in session. He went there voluntarily, at Slyfield's request, to see if he could not make arrangements to carry out his contract of sale, and was no more privileged than as though he had gone there to sell his vessel in the first instance, and had been arrested. His claim to immunity from arrest has not the sanction of authority, and is not, in our opinion, within the reason of the rule invoked.

The order of the learned circuit judge should be affirmed, and the writ is denied.

MONTGOMERY, C. J., and GRANT, J., concurred with HOOKER, J.

MOORE, J. (*dissenting*). This is an application for a writ of *mandamus* to compel the respondent to release the relator from an arrest made at the instance of one Bonnah, who commenced suit by *capias ad respondendum* against the relator. Counsel for relator ask for his discharge for two reasons: *First*, because he was decoyed and enticed into St. Clair county for the purpose of serving process upon him; *second*, because he was privileged from arrest when the process was served upon him. The circuit judge was of the opinion that the first of the above-named reasons did not exist, and that, under the circum-

stances of the case, the relator was not privileged from arrest.

There is not very much dispute about the facts. Mr. Monroe is a resident of Charlevoix county. He was the owner of the schooner Annie P. Grover. He had agreed to sell a half interest in her to one Slyfield. Mr. Slyfield paid $100 on the purchase price, and she had been delivered into his possession. Mr. Slyfield also left with Pratt & Davis, attorneys at Traverse City, a draft and other papers, to be delivered to Monroe upon his executing a proper bill of sale and giving a bond to protect Slyfield from any liens against the boat. One Sperry, of Port Huron, commenced a suit against the boat, for supplies, in the Eastern district of Michigan, and the boat was seized by the United States marshal at Port Huron. Mr. Slyfield conferred with Mr. Phillips, an attorney, as to whether he could safely pay the claim against the boat, and he was advised that he could not, as the bill was a disputed one, and that Monroe had either better authorize Slyfield to pay the claim, or make arrangements at Traverse City to have it paid, or come to Port Huron and arrange it. Mr. Slyfield telegraphed to Monroe that the boat had been seized, and to come at once. December 1st Monroe telegraphed to Slyfield to wire Pratt & Davis to send all papers, and that he would leave the same night. On the same day Slyfield telegraphed Pratt & Davis to send papers, and on the same day Mr. Phillips sent a like telegram. Mr. Monroe arrived in Port Huron the next day, and was promptly arrested at the suit of Mr. Bonnah, for whom Mr. Phillips was one of the attorneys. It is the claim of the relator that Mr. Phillips was consulted in his interest as well as in the interest of Mr. Slyfield, and that his purpose in giving the advice he did was to get the relator within the jurisdiction of the court. It is the claim of Mr. Phillips that he was acting only for Slyfield, and that the purpose of Monroe in coming to Port Huron was to complete a bargain with Slyfield, and that he did not need to come to Port Huron to look after the libel suit.

Without stopping to refine words, we think it clear that there was no reason for Mr. Monroe's coming to Port Huron except because of the conditions naturally growing out of the commencement of the libel suit. This proceeding tied up the vessel, and, if continued, would result in its sale. He had already sold a half interest in the schooner, and agreed to make a bill of sale thereof. The person with whom he made his agreement deemed his presence in Port Huron necessary, and so telegraphed him. It was the relator's claim that Mr. Sperry had no valid claim against the schooner. It is difficult to see how he could properly look after this judicial proceeding, and protect his own interests, without coming to Port Huron, and we think he had a right to do so without being subjected to arrest. In *Jacobson* v. *Wayne Circuit Judge*, 76 Mich. 234 (42 N. W. 1110), the relator was arrested in Tuscola county. His residence was in Montcalm county. After being let to bail he went to Detroit to consult his attorney in relation to the case which had been commenced against him. While in Detroit he was served with a summons for the same torts involved in the criminal case. The court dismissed the case commenced in Detroit, and in doing so used the following language:

" The right of a person to be sued at his own domicile is not a technical one, but one of importance, and should not be taken away except in strict compliance with law. And nonresidents, as a rule, must sue their respondents at home. It is open to some question how far defendants can be sued in such an action of tort as the one now involved, in any county where they do not reside, merely because some one else may be sued with them, so long as the plaintiff does not reside in the State. See 2 How. Stat. §§ 7316, 7547. We are not required to pass on this, and only refer to it to save any point that may be in it. It is oppressive to resort to such proceedings without some good reason, and the service cannot be upheld if unfair and in fraud of any legal privilege. Relator had a right to consult counsel in his defense in the criminal case, and it was not unreasonable to go where his regular counsel lived, on his way home, for that purpose. It cannot

be treated as going out of his way to do so, and it cannot be held that he should cut short his consultation, so long as within reasonable bounds. Counsel cannot always be at the instant command of clients. In the present case relator was served in the office of his counsel on the day when he first procured access to him. The fact that the civil suit was for the same purpose as the criminal one, and begun by the complainant in that proceeding, negatives any idea that bringing it was a mere coincidence, or that the sheriff served the process accidentally; and, at any rate, the service was made while relator was on his way home, without any deviation as to his journey, and with no delay that was not fully justified. The case seems to us a very clear one, both of breach of privilege and of abuse of process, and we think the motion should have been granted."

See, also, the following authorities: *People* v. *Judge of Superior Court of Detroit*, 40 Mich. 729; *Mitchell* v. *Huron Circuit Judge*, 53 Mich. 541 (19 N. W. 176); *Letherby* v. *Shaver*, 73 Mich. 500 (41 N. W. 677); *Hoffman* v. *Bay Circuit Judge*, 113 Mich. 109 (71 N. W. 480, 38 L. R. A. 663, 67 Am. St. Rep. 458).

In *Parker* v. *Marco*, 136 N. Y. 589 (32 N. E. 989, 20 L. R. A. 46, 32 Am. St. Rep. 770), the following language is used:

"The privilege of a suitor or witness to be exempt from service of process while without the jurisdiction of his residence for the purpose of attending court in an action to which he is a party, or in which he is to be sworn as a witness, is a very ancient one. Y. B. 13 Hen. IV., Vin. Abr., 'Privilege.' It has always been held to extend to every proceeding of a judicial nature, taken in or emanating from a duly-constituted tribunal, which directly relates to the trial of the issues involved. It is not simply a personal privilege, but it is also the privilege of the court, and is deemed necessary for the maintenance of its authority and dignity, and in order to promote the due and efficient administration of justice. *Person* v. *Grier*, 66 N. Y. 124 (23 Am. Rep. 35); *Matthews* v. *Tufts*, 87 N. Y. 568. * * * The tendency has been not to restrict, but to enlarge, the right of privilege, so as to afford full protection to parties and witnesses from all forms of

125 MICH.—19.

civil process during their attendance at court, and for a reasonable time in going and returning. *Larned* v. *Griffin*, 12 Fed. 592. Hearings before arbitrators, legislative committees, registers and commissioners in bankruptcy, and examiners and commissioners to take depositions, have all been declared to be embraced within the scope of its application. Bac. Abr. 'Privilege;' *Sanford* v. *Chase*, 3 Cow. 381; *Matthews* v. *Tufts, supra; Hollender* v. *Hall*, (Sup.) 13 N. Y. Supp. 758, 11 N. Y. Supp. 521; *Thorp* v. *Adams*, (Sup.) 11 N. Y. Supp. 479; *Bridges* v. *Sheldon*, 7 Fed. 17; *Plimpton* v. *Winslow*, 9 Fed. 365; and *Larned* v. *Griffin, supra.* It has even been extended to a suitor returning from an appointment with his solictor for the purpose of inspecting a paper in his adversary's possession, in preparation for an examination before a master (*Sidgier* v. *Birch*, 9 Ves. 69); and while attending at the registrar's office with his solicitor to settle the terms of a decree (*Newton* v. *Askew*, 6 Hare, 319); and while attending from another State to hear an argument in his own case in the court of appeals (*Pell's Case* [Ch. MSS. Dec.], cited in *Vincent* v. *Watson*, 1 Rich. Law, 197). No good reason can be perceived why the privilege should not be extended to a party appearing upon the examination of his adversary's witnesses, where the testimony is taken pursuant to the authority of law, and can be read upon the trial with the same force and effect as if it had been taken in open court. It is a proceeding in the cause which materially affects his rights, and the necessity for his attendance is quite as urgent as it would be if the examination was had at the trial. But we do not think that the question of the necessity of his presence is material. It is the right of the party, as well as his privilege, to be present whenever evidence is to be taken in the action which may be used for the purpose of affecting its final determination. It is essentially a part of the trial, and should be so regarded, so far as it may be necessary for the protection of the suitor."

In the notes to *Mullen* v. *Sanborn*, 25 L. R. A. 721 (79 Md. 364, 29 Atl. 522, 47 Am. St. Rep. 421), there is a full collation of cases bearing upon the question.

We think that relator was privileged from arrest at the time the arrest was made.

The writ should issue as prayed.

LONG, J., concurred with MOORE, J.