Erwin E. HENDERSON,
Plaintiff-Appellant,

v.

BROWN ELECTRICAL SUPPLY CO., a
corporation, Defendant-Respondent.

No. 37553.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 14, 1977.

Motion for Rehearing and/or Transfer
Denied Sept. 12, 1977.

Richard M. Stout, Charles A. Hapke, Kirkwood, for plaintiff-appellant.

Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for defendant-respondent.

REINHARD, Judge.

Plaintiff sued for commissions and incentive bonus. He appeals from an adverse judgment in a jury waived case. Under the standard of review in a court-tried case announced in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), we affirm.

Defendant, an electrical supply business, employed the plaintiff under the terms of a written employment contract which was executed on April 17, 1969. The defendant had no written contracts with its other employees, but plaintiff insisted upon a written employment contract. Although the contract was prepared by defendant's counsel, the terms were negotiated with counsel for the plaintiff.

The relevant provisions of the contract include:

Paragraph 2: "The exact *nature and type of services* to be performed by Henderson hereunder are to be *determined by* and *under the continuous* direction of the officers of Brown, but basically are intended to include the responsibilities of a field sales manager with general supervision of and responsibility for the sales efforts of all outside salesmen, and with special responsibility for the development of the electrical utility business handled by Brown." (Emphasis ours.)

Paragraph 3: "Henderson agrees that during his employment, as aforesaid, he will perform such services as are required of him according to directions received by him from Brown * * *."

Paragraph 4: "The parties hereto mutually agree that Henderson shall receive as full compensation from Brown for his said services performed while this contract is in effect, the following:

(a) A monthly commission of twenty-five percent (25%) of the gross profit before taxes for the prior month on any accounts that may be specifically assigned to Henderson by Brown, * *

(b) A monthly commission of one and one-half percent (1½%) of the gross profit before taxes for the prior month for all sales of the Supply Division of Brown.

(c) A monthly car allowance of Two Hundred Dollars ($200.00).

(d) At the end of each fiscal year of Brown on January 31st a commission of one and one-half percent (1½%) of that portion of the gross profit before taxes of the Supply Division of Brown for that fiscal year which is in excess of the gross profit before taxes of the Supply Division of Brown for the fiscal year ending January 31, 1969.

(e) * * * the minimum total compensation Henderson shall receive for any fiscal year of Brown hereunder, shall be Fifteen Thousand Dollars ($15,000.00) * * *."

At the time the parties entered into the contract, Brown had two divisions—the Supply Division and the Appliance Division. The Appliance Division was phased out in the fall of 1969. At the time Henderson's contract was entered into, neither party contemplated the acquisition of a subsidiary.

On July 1, 1970, Brown acquired all of the capital stock of Cook Electric, a competing company. In accordance with Paragraphs 2 and 3 of the contract, Brown's president directed Henderson to perform services for Cook. Henderson devoted a few hours each week to Cook, but did not increase his working hours because of this extra duty. The duties he performed for Cook were of the same type that he had performed and continued to perform for the Supply Division.

Within three months after the acquisition, Henderson declared that he was not satisfied with his compensation because he was not receiving additional compensation for his work with Cook (other than commissions for direct sales). Based on the formu-

la set out in Paragraph 4, Sections (b) and (d), he demanded 1½% of the monthly profits of Cook, and 1½% of its yearly profits from the date of acquisition. He claimed yearly profits from the date of acquisition on the basis that all of Cook's profits were simply additional profits of the Supply Division of Brown, and no base year need be established separately for Cook.

Brown refused Henderson's demands, telling him that his compensation as defined in the contract was based upon the Supply Division's profits, and that Cook was a separate division. On February 1, 1971, however, Brown began paying Henderson 1½% of Cook's monthly profits. From the time of the acquisition of Cook, Henderson had been receiving a 25% commission on all of his direct sales for Cook. These payments were made to Henderson on Brown Electrical Supply Company checks. After that time Henderson periodically "needled" his employers about not receiving the 1½% monthly profits from July 1, 1970 to February 1, 1971, and the 1½% yearly profits produced by Cook since its acquisition by Brown.

While working for Brown, Henderson performed duties beyond that of sales manager. He helped Brown convert to an electronic billing system. He testified that he never expected additional compensation for these types of extra tasks not specified in the contract.

On April 30, 1972, Henderson's employment with Brown was terminated. On October 25, 1972, Henderson made demands for the percent of the profits he had periodically claimed during his employment. Brown refused payment and plaintiff filed suit on December 15, 1972. The parties agree that if Brown is liable, the amount owing is $6,738.40.

Plaintiff contends that he is entitled to additional compensation for the services he rendered for Cook, and he offers several theories upon which to reverse the trial court's decision. Plaintiff claims that the work he was instructed to do for Cook was beyond the terms of the written contract and therefore he was entitled to additional compensation. He argues that absent an express contract providing for additional compensation, the court must infer that the original contract provided for additional compensation for Henderson's additional work. While the employment contract did not make provision for any additional compensation, it did provide that Henderson would perform all duties required of him throughout the Brown Company and in return he would receive "full" compensation based on his sales and the profits of the Supply Division.

■ The general rule provides that when one requests another to perform services for him, there is an implied promise to render reasonable and just compensation therefor. *Gutweiler v. Lundquist*, 200 Mo. App. 526, 207 S.W. 838, 839 (1919). This rule is ordinarily restricted to circumstances where the person performing the service is not already in the employ of the one requesting it.

■ If the person is already employed by the latter, the request for additional services, in the absence of an express special agreement in regard thereto, generally does not justify the inference of an offer to pay anything in addition to the compensation specified in the contract of employment, the assumption being that the extra services were requested and performed under such contract as an incident thereof. Additional compensation can be recovered only where the service is so different in nature from that originally agreed upon and so plainly beyond the scope of the original contract as to warrant the inference of an implied promise to pay therefor. 53 Am.Jur.2d, Master and Servant, § 77, p. 152; *Gutweiler v. Lundquist, supra.* The question of whether the additional compensation should be implied is an issue of fact for the jury, unless only one inference can be reasonably drawn from the nature of the services and circumstances. *Pittsburgh C., C. & S. L. R. Co. v. Marable*, 189 Ind. 278, 126 N.E. 849, 850 (1920); *Robinette v. Hubbard Coal Mining Co.,* 88 W.Va. 514, 107 S.E. 285, 287 (1921); *Watcham v. Inside Inn Co.,* 159 Mo.App. 33, 139 S.W. 228, 230–31

(1911); *New v. Kansas City School of Watchmaking*, 222 S.W.2d 966, 971 (Mo. App.1949); 25 A.L.R. 231; *Leach v. Hannibal & St. Joe Ry. Co.*, 86 Mo. 27 (1885); *Middlebrook v. Slocum*, 125 Mich. 286, 116 N.W. 422 (1908).

■ There is a presumption that the compensation received by the plaintiff from Brown constituted "full" compensation for all services performed by Henderson. This presumption may be rebutted only when it is shown that the services requested are· *so* different in nature from that originally agreed upon and *so* plainly without the terms of the original contract of employment that it is reasonable to assume an implied promise to pay additional compensation for the additional duties. 3 Page on Contracts (2nd Ed.), § 1465 et seq.; 2 Labatt (Second Edition), Master and Servant, § 553 et seq.; *Robinette v. Hubbard Coal Mining Co., supra.*

■ The plaintiff admits that he was to receive no additional compensation for work done for the Appliance Division. He said he expected no additional compensation for the work with the electronic billing system. He was not required to work additional hours by the additional duties, and the additional work was substantially the same as that which he initially performed. The plaintiff did not produce the substantial evidence necessary for the court to find an implied contract to pay for additional services.

■ Plaintiff contends that he is entitled to the additional compensation because Cook should be considered part of the Supply Division and not a separate division. Henderson insists that after the purchase of Cook the term "Supply Division" became susceptible to two different interpretations and thus the contract is ambiguous. Plaintiff argues that any ambiguity in an employment contract must be construed in the employee's favor. Plaintiff relies on *Hinkeldey v. Cities Service Oil Company*, 470 S.W.2d 494, 500[1] (Mo.1971), to support his argument. In *Hinkeldey*, the employment contract was drafted by the employer without input from or negotiations with the employee as to its terms. Henderson's contract, however, was drafted at his request with substantial negotiations between the attorneys on both sides. Rather than automatically construing an ambiguity in favor of the employee, Henderson, we must look to the intent of the parties. *Rhoden Investment Co., Inc. v. Sears, Roebuck & Company*, 499 S.W.2d 375, 383[4] (Mo.1973). Here, the parties' clear intent was to pay Henderson based upon the profits of the Supply Division.

■ Whether Cook was part of the Supply Division or a separate division is a question of fact. Henderson, in support of his contention, relies on evidence tending to show similarities and connections between the operations of Brown and Cook. The record, however, reveals substantial evidence ·indicating Cook was a separate division, and supporting the trial court's decision. The record reveals that the two divisions were separated geographically and physically; that there were separate bookkeeping, payroll, and bank deposits; that each division had its own salesmen, delivery trucks and drivers; and that each division had a different manager.

■ Plaintiff claims that the trial court's construction of the contract defeats the intent of the parties to create an incentive contract. Henderson argues that he should not have been required to perform services where no direct compensation could be obtained. Plaintiff asks that we construe the terms of the contract to imply an obligation on Brown to direct Henderson to perform only those duties which directly benefit the Supply Division. *Conservative Federal Savings & Loan Ass'n v. Warnecke*, 324 S.W.2d 471, 478–79[3] (Mo.App.1959). An implied obligation will not be inserted into a written contract unless it appears that it was so clearly within the contemplation of the parties that they deemed it unnecessary to expressly state it in the contract, or it must appear that the implied obligation is necessary to effectuate the full purpose of the contract. There is no evidence that the parties contemplated the re-

strictive provision sought by the plaintiff. Nor under the circumstances can we say that the purpose of the contract was defeated because Henderson performed a few hours' work for Cook each week without direct remuneration.

The terms of the contract specifically provide that Henderson will perform those services required by Brown "with special responsibility for the development of the electrical utility business *handled by Brown.*" (Emphasis ours.) Rather than defeating the purpose of the contract, Henderson's work for Cook was consistent with the terms of the contract, and further appears to have had remunerative value to Henderson. The record shows that after the acquisition of Cook, Henderson's compensation from the Supply Division increased.

■■■■■ Finally, plaintiff seeks reversal on the grounds that Brown was estopped from denying him additional compensation because it accepted the benefit of his additional work for Cook. To constitute estoppel in pais there must be, first, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on faith of such admission, statement, or act; and third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Rodgers v. Seidlitz Paint and Varnish Company*, 404 S.W.2d 191, 195[1] (Mo.1966). Brown was not inconsistent in its actions but continued to pay Henderson under the formula stated in the contract in return for services contemplated by the parties under Paragraphs 2 and 3. Henderson accepted compensation from Brown with the knowledge that Brown considered that the payments completely covered the work he did for Cook. Cf. *Rodgers v. Seidlitz Paint and Varnish Company, supra.*

Having rejected plaintiff's claims of error, we need not reach the question of accord and satisfaction raised by defendant. The judgment of the trial court is affirmed.

McMILLIAN, P. J., and STEWART, J., concur.