Doyle D. AUSTIN, Respondent,

v.

KANSAS CITY GENERAL HOSPITAL AND MEDICAL CENTER, Appellant.

No. KCD 29058.

Missouri Court of Appeals, Kansas City District.

July 31, 1978.

Motion for Rehearing and/or Transfer Denied Aug. 28, 1978.

Application to Transfer Denied Oct. 10, 1978.

Gordon D. Gee, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for appellant.

John W. Frankum, Gregory O. Grounds, Jones & McDaniel, Kansas City, for respondent.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment of $4,946.05 for Doyle D. Austin in action against his em-

ployer for reasonable value of work and services performed for his employer in excess of ordinary duties. The questions are whether plaintiff pleaded and proved his cause of action; whether the court erred in its verdict-directing and damages instructions given on behalf of plaintiff; and whether the court erred in the exclusion of evidence offered by defendant and in the admission of evidence offered by plaintiff. Affirmed.

Appellant charges the court erred (I) in failing to dismiss plaintiff's petition for failure to state a claim upon which relief could be granted. Appellant asserts that the petition "fails to allege the essential circumstances under which the rendition of valuable services for the defendant by the plaintiff must be made."

Plaintiff pleaded: that on April 15, 1973, he was employed as a maintenance engineer for defendant at an annual salary of $13,-750 and that he was terminated April 12, 1974; that between those dates, at the special instance and request of defendant and due to the nature of the work, he performed work in excess of his ordinary and required duties for benefit of defendant; that defendant accepted such extra work; that it amounted to 816 hours; that the reasonable value of same was $7.00 per hour, $5,712, for which defendant became indebted to plaintiff and, although duly demanded of defendant, defendant has failed and refused to pay.

■ The foregoing allegations conform to those suggested for the petition in quantum meruit for extra services performed by a salaried employee, 21 Am.Jur. Pleading and Practice Forms (Rev.), Form 49, p. 761; and they embody the elements necessary to a prima facie case for the reasonable value of services rendered to another which he accepts, for which the law implies an agreement to pay, *Sprague v. Sea*, 152 Mo. 327, 53 S.W. 1074, 1076 (1899); *Tomasso v. Sorbets*, 147 S.W.2d 151, 152 (Mo.App.1941); *Bennett v. Adams*, 362 S.W.2d 277, 281 (Mo. App.1962); *Kolb v. Howard Corp.*, 219 S.W.2d 856, 858 (Mo.App.1949). Compare *Nolan v. Consolidated School Dist.*, 222 Mo.

App. 59, 300 S.W. 523 (1927), and *Krupnick v. Hellmich*, 378 S.W.2d 562 (Mo.1964), where plaintiff failed to make a case in quantum meruit because his express contract precluded quantum meruit.

■ Appellant charges the court erred (II) in submitting the case. Appellant asserts, "there was no evidence that established, or from which it can be inferred, that the services rendered by plaintiff were rendered under the anticipation that he would be paid therefor * * * or that, in accepting the benefit of such services, defendant was or should have been aware that they were being performed by plaintiff under such an anticipation."

Appellant's contention goes to its general denial and defense of payment, and emphasizes testimony from its officers which tends to contradict plaintiff's theory.

The evidence favorable to plaintiff demonstrates that he supported his petition, found to be sufficient, Point I, *supra*; and that he made a case under the authorities there cited.

Doyle D. Austin was employed by General Hospital April 15, 1973, as maintenance engineering supervisor, a new position. He heard of the job opening from Stewart M. Sullivan, defendant's Director of Plant Engineering. He made application for the job and was interviewed by Mr. Sullivan and Clifford Browne, defendant's Administrator. They detailed the responsibilities of the job as supervisor of some 25 to 30 people in the maintenance department, under the immediate supervision of Mr. Sullivan. Starting salary was stated as $13,750 per year. They explained that the hospital was facing an accreditation inspection; that it was run down and in bad shape; that they had to get it up to a certain degree of acceptability for accreditation which would require a lot of hours. "Mr. Browne told me * * * that I would probably put in so many hours and I would get so disgusted with it that I would wish that I had never seen General Hospital, but not to worry about that, that at a later date I would be compensated for the extra time,

after the accreditation was over with." Mr. Austin understood extra time compensation would be by time off or in money.

Subsequent to the interview, Mr. Austin was notified that he had received the job, effective April 16, 1973, at an annual salary of $13,750. He accepted the job and started to work April 16, 1973, at which time he received a New Employee Notice showing he was employed for 80 "scheduled work hours" per every two week pay period at an hourly rate of pay. He was not required to punch a time clock; he was required to keep time cards. He first kept his extra or overtime hours separately; later, he recorded them directly on his time cards. His department head, Mr. Sullivan, approved and signed the time cards without limitation or question. Mr. Sullivan kept similar records in his own behalf.

Mr. Austin was given a Personnel Policies and Procedures book which was modified by a change in July, 1973, which purported to limit "compensatory time" for employees in his classification to "five (5) working days * * * scheduled at the discretion of the department head." Following receipt of this modification, Mr. Austin discussed its effect on him with Mr. Sullivan. Mr. Sullivan told him that he discussed the effect with the Administrator and advised him that overtime benefits would be taken care of "within our own department." "We'll work it out here, between us."

Mr. Austin was terminated by General Hospital "due to fiscal difficulties," at which time his performance was evaluated as "outstanding." His hourly rate previously had been increased in October, 1973, to $6.593, and it was $6.995 at termination. He had accumulated 816 hours of extra work. He discussed his termination and pay for extra work with Mr. Sullivan, and was advised to see Charles Nigro, the new Administrator. Mr. Nigro was "aware of the overtime situation. * * * he said that he didn't feel * * * I was entitled to it, but he turned right around and offered me five days, rather than to go into a bunch of details about it." Mr. Austin advised Mr. Nigro of his agreements made by

Mr. Browne, to which "Mr. Nigro said he went under his own rules."

Mr. Austin evaluated his extra services at $7.00 per hour, and considered that rate for his 816 extra hours to be "fair and reasonable."

■ Appellant charges the court erred (V) in giving Instruction 3 "because it allowed a recovery by plaintiff without requiring a finding that plaintiff intended at the time the work was furnished to charge therefor, or that defendant intended that plaintiff should be paid therefor."

Instruction 3 was the verdict-directing instruction for plaintiff:

"Your verdict must be for plaintiff if you believe:

"First, plaintiff furnished valuable services to the defendant, and

"Second, defendant accepted such services.

unless you believe that plaintiff is not entitled to recover by reason of Instruction No. 4."

Instruction No. 4 submitted the affirmative defense of payment on behalf of defendant:

"Your verdict must be for the defendant if you believe that plaintiff has already been paid for all services furnished to defendant."

Instruction No. 3 is MAI 26.05, "Verdict Directing-Quantum Meruit-Goods Furnished." The Committee's comment in its citation of Bennett v. Adams, supra, and the Library References to C.J.S. and West's Key No. Digests, Work and Labor, show that MAI 26.05 is intended as well for submission of Quantum Meruit-Services Rendered.

■ Appellant charges the court erred (VI) in giving Instruction 5 on damages:

"If you find the issues in favor of plaintiff, then you must award plaintiff the reasonable value of the services furnished to defendant beyond the services called for by plaintiff's annual salary."

Appellant asserts the instruction fails (A) to limit recovery to five working days as

provided in the manual; fails (B) to place any limitation on recovery; fails (C) to define the services called for in plaintiff's annual salary; and (D) and (E) there was no evidence of the amount or reasonable value of services beyond those called for by plaintiff's salary.

A. Plaintiff's theory, supported in evidence, Point II, *supra*, is that the manual's 5-day provisions did not apply to him.

B. The instruction properly limited recovery to the reasonable value of services furnished beyond the 80 hours' work each two weeks called for by plaintiff's annual salary. Cf. *Cooper v. Norman*, 424 S.W.2d 347 (Mo.App.1967).

C. There was no question that plaintiff had an annual salary of $13,700 for 80 hours per each two weeks.

D. Plaintiff testified that his time cards showed 816 hours in excess of the 80 hours per each two weeks called for in his salary agreement.

E. Plaintiff's evidence showed his hourly rates of $6.593 and $6.995 per hour, and he testified that the reasonable value of his 816 hours' extra work was $7.00 per hour. The jury found the value within those figures.

■ Appellant contends the court erred (III) in excluding competent, relevant, and material evidence offered by defendant.

This contention involves what appellant calls admissions against interest purported to have been made by plaintiff in his deposition. The court rejected the offer upon a finding that the items offered were not admissions and that they were "repetitious items that have already been covered or could have been covered in either the direct or cross-examination of plaintiff." It also involves instances where Mr. Browne, Mr. Sullivan, and Mr. Loya were not permitted to testify on ground of irrelevancy.

Appellant does not demonstrate an abuse of the trial court's discretion in any of these instances.

Appellant also charges the court erred (IV) in admitting incompetent, irrelevant and immaterial evidence offered by plaintiff.

■ This contention involves parol evidence from plaintiff relative overtime hours and pay therefor which appellant says violates the parol evidence rule with respect to the base contract of employment. It also involves receipt of plaintiff's time records showing his overtime hours.

Plaintiff stated a case in quantum meruit for extra services performed by a salaried employee, Point I, *supra*. These items were material and relevant to the issues thus raised, and were not inconsistent with the terms of the base contract. *George F. Robertson Plastering Co. v. Magidson*, 271 S.W.2d 538, 541–542 (Mo.1954).

Judgment affirmed.

All concur.