Keith J. FREDERICK, D.O., and Osage Bone & Joint Clinic, Inc., Plaintiffs–Appellants,

v.

J. Marcus HEIM, D.O., and Christopher J. Leslie, D.O., Defendants–Respondents.

No. 20467.

Missouri Court of Appeals,
Southern District,
Division Two.

April 16, 1997.

James A. Burt, Strong & Associates, Springfield, for plaintiffs–appellants.

W. Gary Drover, Camdenton, Dale C. Doerhoff, Ronald K. Medin, Cook, Vetter, Doerhoff & Landwehr, Jefferson City, for defendants–respondents.

HOUGH, Judge.

The issue here presented is whether an agreement between physicians to provide "coverage" for each other is sufficiently definite and certain to give rise to an enforceable contract. The trial court found, under the circumstances presented, in the affirmative. We agree.

Drs. Frederick, Heim and Leslie are orthopedic surgeons who, prior to October 7, 1994, practiced together in Osage Beach and Lebanon, Missouri as shareholders in the Osage Bone and Joint Clinic, each owning a one-third share of the business corporation originally founded by Dr. Frederick (Appellant).[1]

Drs. Heim and Leslie (Respondents) signed various agreements as a condition of purchase of their interest in the corporation including stock repurchase agreements and non-competition agreements in favor of Appellant.

During the summer of 1994 the parties began to have differences on business matters and on September 12, 1994, Respondents called a special meeting and voted to remove Appellant as president of the corporation and to withdraw Appellant's authority to sign checks or conduct any banking business on behalf of the corporation. The banks were so notified and additionally the postmaster at Osage Beach was directed not to deliver mail to the corporation.

On the same day Appellant exercised his options of repurchase of the stock of Respondents. Thus, after September 12, 1994, both factions claimed to control Osage Bone and Joint Clinic.

On October 7, 1994, Respondents filed suit against Appellant (and others) seeking declaratory and injunctive and other relief, and on October 12, 1994, Appellant filed suit against Respondents seeking similar relief. The actions were consolidated and a corporate receiver was appointed by the trial court.

On December 21, 1994, pending motions were scheduled for hearing in the consolidated cases. The parties announced to the court that settlement of all issues had been reached. The transcript reveals the following:

"Q. The Court: During the course of the afternoon, the parties have advised the Court that there has been a settlement of

---

1. For purposes of this analysis, the plural Appellants will be referred to singularly.

the case reached. Who intends to state what the terms of that settlement are?"

"A. Mr. Burt: Yes. I have 18 terms listed here. So I'll try to be concise...."

Mr. Burt, Appellant's attorney, thereafter stated the agreed terms of the settlement into the record of the court. Reciting the detail of the monetary agreements would serve no useful purpose here, and suffice it to say that substantial funds were involved in bank accounts, uncollected insurance billings, and in mailings which remained unopened and "on hold" in the Osage Beach post office, and unpaid salaries of the parties who were corporate employees. It was agreed that mutual releases would be exchanged including release of the covenants not to compete, and that Respondents would retain the Lebanon office and Appellant the Osage Beach office and full ownership of all the stock in the corporation.

The portion of the agreement involving "coverage" was stated to the court by Appellant's attorney as follows:

"All of the doctors have agreed to cooperate with the call schedule at the hospital and to arrange coverage for one another for weekends, days off, et cetera."

All attorneys represented to the court that their respective clients had authorized the making of the agreement. Appellant's attorney agreed to "take the first crack" at reducing the agreed settlement to writing. The court noted the stipulation on the record, discharged the receiver, directed the stipulation to be reduced to writing and the case to be then dismissed.

Counsel for Appellant submitted a draft proposal of the settlement agreement which included a definition of "coverage" which was basically the schedule of rotation the physicians had followed while practicing together as shareholders-partners. The Appellant's draft proposal was not acceptable to Respondents. Instead, Dr. Leslie's attorney drafted and submitted a proposed agreement in which he attempted to use the exact language of the settlement as it was dictated into the record. To accomplish this, he requested and obtained a transcript of the agreement that was spread on the record.

In this draft, the "coverage" provision was identical to that dictated on the record. By March 1, 1995, Appellant had not signed Respondents' proposed agreement; consequently, on that date Respondents filed their motion to compel settlement. Their motion sought to compel the settlement on the basis of what had been dictated on the record on December 21, 1994.

After Respondents filed their motion, Dr. Leslie's lawyer wrote to Appellant's counsel on March 8, 1995. The letter renewed Respondents' demand that Appellant sign the settlement contract drafted by Dr. Leslie's attorney. As to Respondent's view on the coverage question, the letter recited that the party requesting coverage should give reasonable notice of any request for coverage, should give the specifics of the request and make arrangements for compensation. When Appellant never acceded to Respondents' views about coverage and when other disputes about the settlement contract persisted, Respondents proceeded with their efforts to enforce settlement.

On August 9, 1995, the motion to compel settlement was heard by the trial court. Testimony was presented of performance of the agreement of December 21, 1994 by the parties and the extent thereof; that Respondents had caused the release of corporate mail to Appellant containing approximately $130,000.00; released the corporate bank account to Appellant containing approximately $70,000.00; signed insurance forms allowing Appellant to collect approximately $135,-000.00; provided computer data for accounts receivable from the office in Lebanon, Missouri, and released assets from the Lebanon office. Appellant released to Respondents the operation of the Lebanon office; paid a portion of the accounts receivable due to them; divided up the call schedule at the Lake of the Ozarks Hospital; and released patients' files and records to them as requested by the patients, all as anticipated in the agreements dictated into the record. Additionally, that Respondents had provided "coverage" for Appellant over Christmas, 1994, and as requested in January, February and April, 1995 without compensation.

The Appellant's contention was that the entire settlement agreement was void and unenforceable because the agreement to provide "coverage" was vague and ambiguous.

From the evidence presented the trial court could find that the term "coverage" is commonly used and understood in the medical community as caring for a physician's patients in his absence; that "coverage" can mean a broad scope of things from answering patient telephone calls during the day and after hours to taking care of patients in the emergency room, as well as providing rounds for those patients in the hospital and even include operative services for surgical patients. Additionally, that services of this nature are provided by private groups of physicians and that such a group is located in Jefferson City, Missouri. Appellant does not dispute the foregoing but contends he anticipated "coverage" by Respondents on the same basis as when they were practicing together as a medical group, specifically, he did not anticipate Respondents' expectation of compensation for their services after the dissolution of their former business relationship.

At the conclusion of the hearing on the motion to compel settlement on August 9, 1995, the transcript reveals the trial court stated:

"Coverage has to mean what the industry says it means. These doctors are now in a competitive situation, And the industry of the trade is going to dictate what the definition of coverage means. And that term, as it's used in this settlement agreement, is not so vague, so broad, as to make this agreement unenforceable."

In the formal Judgment Entry filed August 31, 1995 the trial court declared:

"The Court finds against Dr. Frederick with respect to his contention that the Settlement Agreement as it relates to coverage is vague and ambiguous. The Court finds that the term 'coverage' as used in the Settlement Agreement by the parties was understood and acted upon by the parties in accordance with its meaning as used in their profession. The Court finds that the ... Settlement Agreement should not be held void due to uncertainty, because meaning can be given to the agreement of the parties so as to carry into effect their reasonable intentions."

This appeal followed.

Respondents filed their joint motion to dismiss alleging that the right to appeal has been waived by compliance with and benefit from the judgment by Appellant, which motion is taken with the case.

■ A motion to compel settlement, in effect, adds to a pending action a collateral action for specific performance of the settlement agreement. *Landmark Bank v. First Nat'l Bank in Madison,* 738 S.W.2d 922, 923 (Mo.App.1987). The review of a court-tried action is set forth in Rule 73.01(c) and *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). The judgment of a trial court will not be reversed by an appellate court unless there is no evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32[1].

■ Appellant desires to have no settlement agreement and to further litigate the rights of the Respondents to practice medicine in the area covered by the non-competition agreements entered into with the corporation at the time of original association with Appellant. Appellant believes the parties should be returned to the status quo as of December 21, 1994, and contends such is possible. As set forth above, the only contention of Appellant is that the part of the comprehensive agreement of settlement which provides that the parties will "arrange coverage for one another" is so vague as to render the entire agreement unenforceable. Appellant contends that he anticipated a continuation of the rotation schedule, without monetary consideration, that the three physicians followed while in a congenial business relationship. Respondents contend that they have, and will, provide coverage for Appellant with reasonable notice and compensation.

It is to be noted that it was counsel for the Appellant who selected the use of that term in the oral stipulation on the record without further definition.

Appellant argues that the stipulation made in open court was not intended to be the settlement contract but rather that a formal written agreement executed by the parties was anticipated. We believe that the parties did feel that a binding agreement had been made by the stipulation as is evidenced by the substantial performance promptly entered into by all parties. Certainly, the relinquishment of the bank accounts, billings, patient records and division of the call schedule at the hospital were of great importance to the parties and were major issues in contention in the consolidated lawsuits.

"In the case before us it is clear the parties entered into a binding stipulation in open court concerning the division of their property. Like the Supreme Court of Missouri this court believes that an oral stipulation should be as binding as a written contract when the oral agreement is entered into in open court by parties represented by able counsel and the agreement is spread upon the record. (citation omitted). Indeed such an agreement is a contract, but made with greater 'solemnity and better protection to the rights of the parties than an ordinary contract made out of court.' " (citation omitted).

*Markwardt v. Markwardt,* 617 S.W.2d 461, 462–63[1] (Mo.App.1981). This contention of Appellant has no merit.

That the agreement to provide "coverage" may be ambiguous as to time, place and scope of performance and the compensation to be paid is a different issue than whether the agreement is so vague, indefinite and ambiguous as to be totally unenforceable and void. The nature of the services to be provided by the "covering" doctor will depend upon demands of the requesting doctor, whether it be to take telephone calls for an evening out or assume his entire practice during an extended vacation out of the country.

In *Marshall v. Edlin,* 690 S.W.2d 477, 480[4] (Mo.App.1985) a similar contention of unenforceability was advanced. There, the parties orally agreed that plaintiff would harvest the defendant's crops for a charge of $20.00 per acre. It was known that defendant owned 470 acres and that some might

be damaged by weather and not harvestable. Defendant harvested his own crops and plaintiff brought suit. In holding that the contract was not void for indefiniteness as to time and scope of performance the court said "Any indefiniteness in the terms was due to the nature of the work to be performed.... All things considered, the terms of the agreement were as definite as the nature of the work would permit." *Id.*

This court has held that "[w]hen an ambiguity exists the agreement is to be given a construction which will reflect the real intention of the parties and, in doing so, the court may consider the circumstances surrounding the execution of the contract." *Coughenour v. Bates,* 785 S.W.2d 291, 297[5] (Mo.App. 1990).

The Appellant contends that since he did not anticipate the Respondents would request compensation for services when requested to "cover" and the Respondents now demanding compensation based on the services requested, there was a fatal absence of a "meeting of the minds" and the absence of an essential term of the agreement rendering the agreement void. This contention of Appellant has no merit.

"A contract is not rendered ambiguous by the fact that the parties do not agree upon the proper construction to be given it. A contract is ambiguous only when it is reasonably susceptible of different constructions." *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 901 (Mo.banc 1990); *Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264[5, 6] (Mo.banc 1973).

The Appellant's right to believe that the Respondents would continue free services on his behalf ended when the business relationship of the parties ended. During the business relationship the parties had contracted to the rotating schedule of "coverage" along with many other agreements. The rights of the parties under these contracts were settled and released and a new contract entered into by the stipulation of December 21, 1994. While the new agreement does not state that Respondents will be compensated for their coverage, this does not

preclude the affirmance of the trial court's ruling. Missouri law holds "when one requests another to perform services for him, there is an implied promise to render reasonable and just compensation therefor." *Henderson v. Brown Elec. Supply Co.*, 555 S.W.2d 635, 638[1] (Mo.App.1977). "This rule is ordinarily restricted to circumstances where the person performing the service is not already in the employ of the one requesting it." *Id.* The agreement between Appellant and Respondents is not void.

In view of the holding herein it is unnecessary to detail the grounds for Respondents' motion to dismiss the appeal and the same is ruled as moot.

The Judgment is affirmed; costs to Appellant.

FLANIGAN, Senior Judge, and MONTGOMERY, C.J., concur.