Scott ROEBUCK, Appellant,

v.

**VALENTINE–RADFORD, INC.,**
**Mark Spence, Respondents.**

No. WD 52842.

Missouri Court of Appeals,
Western District.

Sept. 23, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 28, 1997.

Application to Transfer Denied
Dec. 23, 1997.

Kelly Tobin, Kansas City, for Appellant,

Charles M. Thomas, Kansas City, for Respondents.

HANNA, Judge.

The trial court directed a verdict at the close of the plaintiff's evidence on his claims for breach of contract and § 290.110, RSMo 1994, *quantum meruit*, negligence, and punitive damages. The court submitted plaintiff's claims for conversion and fraud. The jury found in defendants' favor on the two claims submitted. On appeal, the plaintiff contests the trial court's granting defendants' directed verdict and the admission of certain evidence.

The defendant, Valentine–Radford, Inc., (V–R) is engaged in the advertising business with offices in Kansas City. The defendant Mark Spence is an employee of V–R and was the immediate supervisor of the plaintiff. Plaintiff was hired by V–R in October of 1993, and left their employ in June of 1994. In the plaintiff's first amended petition, he addresses two grievances. The first was that he was promised but not paid compensation for "overtime" work performed for V–R. The second concerns his personal materials which were stored on the company's computer and were not returned to him.

The compensation claims were set forth in Counts I, II, III, and V. Count I alleged that on February 16, 1994, and again on or about May 1, 1994, the plaintiff and defendant V–R agreed to an increase of plaintiff's salary, and that the parties agreed that plaintiff would receive compensation for overtime work, to be paid at the time of his year-end bonus, which V–R failed to do. Count II asserts that the breach alleged in Count I constituted a violation of § 290.110, RSMo 1994, which provides penalties for failure to pay wages timely. Count III is a claim for fraud against both defendants, charging that during negotiations leading to the February and May pay raises, Spence and other employees of V–R knowingly misrepresented to plaintiff that he would be compensated for work in excess of 40 hours per week through bonuses. Count V contends that V–R was unjustly enriched because it did not pay the plaintiff for his work in excess of 40 hours per week. The court directed verdicts in favor of the defendants on Counts I, II, and V. Count III

was submitted to the jury and it returned a verdict in favor of the defendants.

Counts IV, VI, and VII address the computer records claim. Count IV asserts a claim for conversion and punitive damages against both defendants alleging that V–R allowed plaintiff to store his personal documents and programs on the company laptop computer. He maintains that both defendants promised to return these items but did not do so. Count VI is a negligence claim alleging that the defendants breached their duty by failing to provide a qualified person to remove the items stored on the laptop computer. Count VII is a claim for punitive damages, alleging that the defendants willfully refused to take precautions against destruction of the plaintiff's personal records on the computer. The court directed verdicts in favor of the defendants on Counts VI and VII. Count IV was submitted against V–R only and the jury returned its verdict in favor of the defendant.

 In his first point, the plaintiff asserts that the parties' written employment contract was modified by an oral agreement creating a genuine issue of fact that the modified agreement "included the payment of hours worked by [plaintiff] in excess of 40 hours per week paid through the year end bonus."

Plaintiff worked at V–R from October 25, 1993, until June 10, 1994, as V–R's Macintosh network manager. The plaintiff executed a written Employment Agreement with V–R which provided that plaintiff would be paid a starting salary of $30,000 per year and recited "the need for you to devote your full time to the company's business," and that "[y]our employment shall be on a full time basis." Plaintiff's duties included managing the Macintosh computer network, installing software, training employees on computers, and conducting software audits. He was promised that a salary review would take place when it was determined what the industry's standards were for a similar position. In February 1994, the plaintiff's salary was increased to $38,000 per year. In May 1994, again at the plaintiff's request, V–R raised his salary to $48,000.[1]

At the time the plaintiff was hired, his job duties were not clearly defined as the position was newly created. The parties understood that the plaintiff's duties would include software auditing for licensing compliance, teaching new employees, assisting employees in their functions with the Macintosh and answering questions, and maintaining the Macintosh network which consisted of 180 computers and 20 to 30 printers. At the start of his employment, the plaintiff did not anticipate there would be much overtime, which would allow him to do outside consulting work. Shortly after commencing employment, the plaintiff found that the defendant's expectations would require more than 40 hours a week. Plaintiff acknowledged that during negotiations of his written agreement, he did not ask for a provision that would pay him for overtime work because Mr. Spence had said that he expected that overtime work would be minimal.

The plaintiff's brief fails to identify the facts supporting an amended agreement by oral modification. He argues that there was "substantial evidence" of an agreement that modified the original agreement, but we are unable to discern what facts he relies on that establish the amended oral agreement. Rule 84.04(c) V.A.M.R. requires a statement of the facts relevant to the questions be presented for determination. This rule contemplates a factual recitation, not legal conclusions. *Id.*; *White v. Johnson*, 206 S.W.2d 577, 578 (Mo. App.1947). Conclusory statements substituted for facts do not comply with the rule. *See Mease v. McGuire*, 886 S.W.2d 654 (Mo.App. 1994). Furthermore, our *ex gratia* search of the record reveals that substantial evidence does not exist to prove an oral modification agreement.

1. The supervisor who hired the plaintiff and who considered salaries of the employees, placed a great deal of importance on the employee's educational background. He testified that he was impressed with the plaintiff's educational resumé which stated that he had two Bachelor's degrees from Northwestern University and a Masters degree from Emory University. Discovery during the plaintiff's lawsuit revealed that these representations were false and that the plaintiff had no college or Masters degrees. The supervisor testified that these educational representations as to his educational background were an underlying assumption in the plaintiff's salary increases.

■ "In determining the submissibility of a case we must consider the evidence in the light most favorable to the plaintiff and must accord him the benefit of all supporting inferences fairly and reasonably deducible from the evidence." *Koehler v. Warren Skinner, Inc.*, 804 S.W.2d 780, 782 (Mo.App.1990). Reference to the transcript reveals that if a submissible case was made, it had to be on the plaintiff's testimony only.

The evidence that pertains to the plaintiff's overtime compensation is as follows. The plaintiff was not an employee entitled to receive time-and-a-half for overtime work. He testified that he suggested to Mr. Spence that he be declared a non-exempt employee, thereby making him eligible for overtime pay. Mr. Spence answered that he would talk to the company attorneys to see what could be done about making him a non-exempt employee. The plaintiff testified that "we came to an agreement. . . ."

The plaintiff's statement that "we came to an agreement" does not provide a factual basis to prove an oral contract or an amendment. More importantly, however, the statement is followed by the plaintiff's acknowledgement that the "agreement" was contingent upon the opinion of the company's lawyers as to whether the plaintiff's position could be exempted from the wage and hour laws. There is no evidence that the question was ever resolved.

This evidence does not support a meeting of the minds regarding the same thing at the same time. *See Hoops v. Gateway Food Products*, 824 S.W.2d 451, 453 (Mo.App. 1991). The plaintiff's testimony concerning the parties' "agreement" to pay overtime was only part of their ongoing negotiations with regard to the hours he worked and his compensation. There was no mutuality of agreement under the plaintiff's evidence that V–R would pay overtime. Furthermore, there was no evidence as to the compensation to be paid for the overtime, or the number of hours that were subject to "overtime" compensation. The evidence fails to demonstrate the necessary definiteness and certainty required of an agreement. Point denied.

■ The plaintiff's second point is denied because of our ruling on the first point. The plaintiff claims that he is entitled to compensation under § 290.110, RSMo 1994, which imposes a penalty on an employer who delays, over seven days, in paying a terminated employee wages accumulated by the employee at the time of his termination. As discussed in the first point, the plaintiff claims that he was entitled to the overtime wages. The point has been ruled against him and, therefore, the trial court was correct in not submitting the § 290.110 claim to the jury.

■ In the plaintiff's third point, he argues that the trial court erred when it directed a verdict against him on his unjust enrichment-*quantum meruit* claim. The plaintiff contends that at the request of V–R, his duties were expanded to include working on advertising pitches for potential customers. This duty was in addition to his ordinary and required duties, and the defendant accepted the benefits but refused to pay for the reasonable value upon demand.

■ The law of *quantum meruit* will ordinarily imply a promise to pay the reasonable value of such services where one party renders valuable services to another which the latter accepts. *See Kolb v. Howard Corp.*, 219 S.W.2d 856, 858 (Mo.App.1949). "If the person is already employed by the latter, the request for additional services . . . generally does not justify the inference of an offer to pay anything in addition to the compensation specified in the contract of employment." *Henderson v. Brown Electrical Supply Co.*, 555 S.W.2d 635, 638 (Mo.App.1977). In a *quantum meruit* claim for services performed by an employee, the employee must show that: at the special insistence and request of the employer, the employee performed work in excess of his ordinary and required duties for the benefit of the employer; that the employer accepted such work; that it amounted to an amount certain; that the reasonable value for the work was a price certain; and, although duly demanded of the employer, the employer has failed and refused to pay for the services. *See Austin v. Kansas City Gen. Hosp. and Medical Ctr.*, 570 S.W.2d 752, 754 (Mo.App.1978).

The plaintiff claims that the duties he agreed to perform when he was hired, and

when he signed the Employment Agreement, were changed and expanded by V–R. He claims that "the services performed by [him] were of such a different character that compensation could be presumed."

In *Henderson v. Brown,* the court required that the services "be so different in nature from that originally agreed upon and so plainly beyond the scope of the original contract as to warrant the inference of an implied promise to pay therefor." 555 S.W.2d at 638.

The testimony regarding the plaintiff's job responsibilities was relatively limited. Plaintiff testified that prior to his hire at V–R, he was aware that "software auditing" would be one of his responsibilities. He further testified that his other duties consisted of: maintaining V–R's Macintosh network (which consisted of 180 computers and 20 to 30 printers); teaching employees how to do things on Macintoshes; assisting employees in their functions; and answering questions. There was no evidence as to any limitation on the scope of his responsibilities with regard to V–R's Macintosh system. Specifically, plaintiff testified that during the last three or four months of his employment his duties were expanded to require his participation in making presentations to potential customers, utilizing Macintosh computers, at the request of V–R's CEO.[2]

The evidence is straightforward that the plaintiff was hired for a new position at V–R, and that neither of the parties knew exactly the extent of the job duties.[3] It is also apparent that the specific duty of making sales pitches on the Macintosh computer was not discussed but rather it was something that evolved later. There was no written job description that defined the duties, nor were there any limitations placed on the job duties in the employment contract. The result is that the scope of the duties and responsibilities associated with his position were generally undefined at the time he was hired. Therefore, any duties involving Macintosh computers, which the plaintiff performed for the benefit of V–R, would have been contemplated as part of their agreement. We cannot say that the sales pitches to customers was so different and so plainly beyond the scope of the original agreement so as to warrant an inference of an implied promise to pay. As such, the plaintiff's evidence fails to prove a required element of a salaried employee *quantum meruit* claim and, therefore, the trial court did not err in directing a verdict for V–R.

Furthermore, the plaintiff failed to present evidence as to the reasonable value of the services. The plaintiff has the burden of proving the reasonable value, and must do so via expert testimony. *See Hoops v. Gateway Food Products,* 824 S.W.2d 451, 453 (Mo.App.1991); *Baron v. Lerman,* 719 S.W.2d 72, 77 (Mo.App.1986). Plaintiff did not call an expert witness to testify as to the reasonable value of his services at issue here.[4] Failure to prove reasonable value of services performed is fatal to a *quantum meruit* claim. *See Hoops,* 824 S.W.2d at 453. Point denied.

The plaintiff's fourth point concerns the plaintiff's negligence claim relating to V–R's extraction of the plaintiff's computer records from the laptop computer owned by V–R and used by the plaintiff during his employment. The plaintiff alleges that V–R breached their duty of negligence by "failing

---

2. Mr. Spence, the plaintiff's supervisor, testified that his duties at V–R encompassed anything that had to do with the Macintosh network. This included his role in the presentations to new customers, which was to help prepare the graphics with a computer software program that utilized the computer screen to project presentation images.

3. As a result of the undefined nature of the new position and it's duties, the plaintiff testified that the parties agreed that his salary would be reevaluated after six months, in light of the evolved responsibilities.

4. The plaintiff, with regard to his testimony regarding the reasonable value of the work he performed, failed to demonstrate that he possessed a peculiar knowledge, wisdom, or skill regarding the price usually and customarily paid for such services in the locality where the services were rendered. See *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208 (Mo.1991); *Cavic v. Missouri Research Laboratories, Inc.,* 416 S.W.2d 6, 9 (Mo.App.1967).

to provide or use a qualified person to extract his personal documents" from the laptop computer.

There was a total lack of proof at trial that the defendants failed to use a qualified person or that they used a person to extract the information that was not qualified to do so. A review of the record demonstrates that the plaintiff has not related any facts that prove negligence occurred.

■ The plaintiff argues, for the first time in his reply brief, that the court should have submitted his negligence claim under a *res ipsa loquitur* doctrine. "The requisites of a pleading for *res ipsa loquitur* are: (1) the incident resulting in injury is the kind which ordinarily does not occur without someone's negligence; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident." *Logan v. Phillips,* 896 S.W.2d 38, 41 (Mo.App.1994). *See also First Baptist Church of Jefferson City v. Bybee Church Organs,* 789 S.W.2d 829, 831 (Mo.App.1990). The plaintiff did not plead the three requisite elements of *res ipsa loquitur* negligence. Since he did not allege a theory of negligence under *res ipsa loquitur* at trial, he cannot now argue that he made a submissible case under that theory.[5] Point denied.

The plaintiff next argues that the trial court erred in directing a verdict against him on his claim for punitive damages, which is an adjunct to the negligence claim discussed in the preceding point. We ruled that the trial court did not err in directing a verdict on plaintiff's negligence claim and, therefore, the claim for punitive damages is ruled accordingly.

■ In his final point, the plaintiff asserts that the trial court erred in allowing V–R, during the trial, to make "references to isolated settlement negotiations and communications" in order to establish an abandonment of claim theory with regard to the insufficient computer files. The plaintiff does not identify the specific remarks of counsel, he only claims that they were "constant and continued." Also, he has not advised how the specific remarks were prejudicial.[6]

Our own review, however, reveals that there was testimony concerning the settlement negotiations. If any error occurred, however, it was waived because the plaintiff first raised the issue of the pre-trial discussions between the parties' attorneys. On direct examination, the plaintiff testified that V–R had offered to settle one of the plaintiff's claims by tendering a severance check in exchange for a release. Furthermore, the plaintiff testified that he had directed his attorneys to send a letter to V–R (and their attorney) regarding the insufficient personal computer files he received off the laptop computer and then, on cross-examination, he testified that he did not follow up on the missing computer files because he had an attorney who was doing that for him.

The evidence placed into question whether the insufficient computer files was addressed by the parties prior to the filing of the lawsuit. As such, the plaintiff first introduced the matter, and cannot now complain. Point denied.

Judgment Affirmed.

LAURA DENVIR STITH, P.J., and BRECKENRIDGE, J., concur.

■

---

5. The plaintiff also failed to argue res ipsa loquitur negligence in his Motion for New Trial before the trial court. We are also unable to ascertain, from our review of the record, if a *res ipsa loquitur* jury instruction was offered. See generally, *City of Kennett v. Akers,* 564 S.W.2d 41 (Mo. banc.1978).

6. The appellant's Statement of Facts only refers us to the defendant's opening statement—which was not objected to—and to a question by defendant's counsel which was objected to, and then abandoned.